## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VIDEOLOGY, INC., *et al*.,[1] | Case No. 18-11120 (BLS) |
| Debtors. | Jointly Administered |
| | **Proposed Hearing Date: June 5, 2018 at 10:00 a.m.**<br>**Objection Deadline: TBD** |

## DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR ORDER APPROVING SETTLEMENT WITH GROUPM DIGITAL UK AND AFFILIATES

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or

"Videology") hereby move this Court for entry of an order pursuant Fed. R. Bankr. P. 9019, in

the form attached hereto as **Exhibit A**, approving a settlement (the "Settlement") by and between

the Debtors and GroupM Digital UK and its affiliates (collectively, "GroupM"). A copy of the

executed settlement agreement setting forth the terms of the Settlement is attached hereto as

**Exhibit B** (the "Settlement Agreement").[2]  In support of this Motion, the Debtors respectfully

state as follows:

### Preliminary Statement

1.      GroupM is the Debtors' largest customer, and the Debtors require payment by

GroupM of outstanding invoices to have the liquidity through a sale.  The pending proposed

post-petition debtor-in-possession financing, while also critical, does not alone provide the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Videology, Inc. (2191), Collider Media, Inc. (8602), Videology Media Technologies, LLC (6243), LucidMedia Networks, Inc. (8566) and Videology Ltd.  The address of the Debtors' corporate headquarters is 1500 Whetstone Way, Suite 500, Baltimore, MD 21230.

[2]  Capitalized terms not defined herein have the meanings ascribed to such terms in the Settlement Agreement.

Debtors with sufficient cash to continue operations through a sale transaction without cooperation and payments from the Debtors' key customers, including GroupM.

2.      The Debtors contend that certain GroupM entities owe certain Debtor entities approximately $19 million.  GroupM is owed over $31 million and contends that it has complete defenses to the Debtors' claims.  While the Debtors strongly disagree with GroupM's position, this dispute must be resolved amicably with GroupM on an expedited basis for the Debtors to have sufficient cash to meet their obligations through what promises to be a robust sale process, with a stalking horse bidder already in place and many entities having expressed interest in participating in bidding.

3.      To facilitate this process and resolve these disputes, GroupM has agreed to pay $$14,647,650  of the $19,297,650 claim deal with in the Settlement Agreement,[3] while being permitted to exercise setoff rights as to the balance.  In addition, the Settlement Agreement would release avoidance claims against GroupM under setoff agreements effectuated prior to the filing of these Chapter 11 cases.  The Debtors believe that would succeed in litigation; however, litigation has inherent risk and cost that the Settlement would avoid, and GroupM strongly contests the Debtors' ability to collect any of the GroupM invoices without GroupM being permitted to apply those amounts to amounts that are owed by certain Debtor entities to certain GroupM entities.  Moreover, litigation of these disputes would present serious timing issues, because by the time the parties were to obtain a final ruling as to GroupM's obligations to the Debtors, business operations would have likely ceased and it would likely be too late to salvage

---

[3] The parties (and other affiliates) owe other amounts that are not covered by this Settlement Agreement, and nothing in the Settlement Agreement is intended to waive or settle those other amounts.

the companies as a going concern and pursue the sale process that is indisputably in the best

interest of the Debtors, their estates and creditors.  Accordingly, the Debtors have exercised

sound business judgment in entering into the Settlement Agreement with GroupM, and the

Settlement Agreement should be approved.

## Jurisdiction and Venue

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper in this district purusant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicate for the relief requested herein is Fed. R. Bankr. P. 9019.

## Background

### A.      General Background

7.      On May 14, 2018 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

factual background regarding the Debtors, including their business operations, their capital and

debt structures and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in

the Tarpey Declaration filed on the Petition Date.

8.      The Debtors continue to manage and operate their businesses as debtors in

possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has

been requested in these Chapter 11 Cases.  On May 17, 2018, the United States Trustee for the

District of Delaware appointed an Official Committee of Unsecured Creditors.  *See* Docket

No. 72.

57731/0003-15889641v1

9.      Prior to the commencement of these Chapter 11 Cases, the Debtors engaged in extensive discussions which culminated in an Asset Purchase Agreement dated May 4, 2018 with Amobee, Inc., for the sale of substantially all of the Debtors' assets, subject to a bankruptcy sale process and this Court's approval. On May 14, 2018, the Debtors' filed a motion requesting the Court's approval of bidding and sale procedures that will ensure that the Debtors' business is sold for the highest and best price to achieve the best outcome possible in these Chapter 11 Case, which is in the best interest of the Debtors' creditors, employees, clients, and other parties in interest. *See* Docket No. 39.

10.      The Debtors have concluded that the best and safest path to create the liquidity necessary to get through a sale closing is (i) to obtain the proposed debtor-in-possession finacing, which will payoff the prepetition secured lenders and provide additional liquidity through a sale, and (ii) enter into the Settlement Agreement with GroupM to ensure that GroupM's invoices owed to the Debtors are paid in a prompt fashion while the Debtors are still operating as a going concern, and without the need for protracted and uncertain litigation with GroupM over the viability of its defenses to payment.

### Settlement Background and Terms

11.      GroupM is Videology's largest vendor and client.  Certain of GroupM's companies provide Videology with inventory, in the form of media space for advertising, which Videology enhances with its proprietary technology.  Other GroupM entities then place advertising for their clients utilizing the enhanced media.  Accordingly, certain GroupM entities

-4-

owe the certain of the Debtors money, and, in turn, certain Debtors owe certain GroupM entities money.

12.    On April 30, 2018, a Setoff Agreement (the "April Setoff Agreement") was entered into by Videology and affiliates (referenced as the "Videology Companies"), GroupM and affiliates (referenced as the "Group M Companies"), and the prepetition enders.  The April Setoff Agreement recites that:

> [F]rom time to time, any one or more of the GroupM Companies is owed obligations from any one or more of the Videology Companies, is entitled to compensation from any one or more of the Viedeology Companies, or has or intends to enter into arrangements with one or more of the Videology Companies pursuant to which one or more of the GroupM Companies provides consideration to one or more of the Videology Companies (collectively, the "Customer Claims").

13.    The parties agreed that "any and all payments owed by GroupM Companies to Videology Companies in respect of Customer Orders placed by GroupM Companies during the month of April, 2018, will be offset against any and all payments owed by Videology Companies to GroupM Companies in respect of any compensation obligations arisig out of such Customer Orders during the month of April, 2018."  The Net April Payment Amount" was £1,206,002 to Videology, which amount was to be paid to the Prepetition Lenders, whereupon such lenders would lend the Videology Companies up to £305,857 to pay Publishers specified on a schedule thereto.

14.    A similar agreement was entered into on May 8, 2018 (the "May Setoff Agreement").  Using estimated numbers, subject to reconciliation, the parties arrived at a "Net Initial May Payment Amount" of £504,542.87, to be paid to the Prepetition Lenders' Agent.

57731/0003-15889641v1

15.     The April and May Setoff Agreements provided liquidity to Videology by accelerating payments specified therein, which was critical after the pre-petition lenders restricted the Debtors' use of cash leading to the bankruptcy.

16.     Videology asserts that £4,995,424 was offset under the April Setoff Agreement and £2,065,894.54 was offset under the May Setoff Agreement, and that these amounts may be asserted as preference claims against GroupM.entities under section 553(b) of the Bankruptcy Code (the "Disputed Offsets").

17.     GroupM denies that the Disputed Offsets are avoidable, and furthermore contends that it is not obligated on the estimated $21 million in GroupM accounts payable to Videology, contending that (a) it is entitled to offset or recoup the GroupM accounts receivable of approximately $31.7 million, and/or (b) consistent with the parties' customary practice, any payments made by GroupM on accounts payable incurred acquiring enhanced media from Videology are earmarked for reimbursement of the original expeditures by GroupM to acquire the media that Videology enhanced and sold back to GroupM,and a debtor cannot recover a payment to a creditor if it consists of money received by the debtor for the purpose of paying that creditor.  *Aalfs v. Wirum* (*In re Straightline Inv.*), 525 F.3d 870, 881 (9th Cir. 2008).  GroupM contends further that the Disputed Offsets would not be avoidable even in the absence of the foregoing defenses, because, among other reasons, the netting of contemporaneous obligations pursuant to a single contract to which all of GroupM and Videology entities were party (a) resulted in no material improvement in GroupM's position under section 553(b), and (b) is paradigmatic recoupment.  Further, even if transfers were avoided, any net benefit to the estates

-6-

would be significantly diluted by the size of GroupM's claims relative to those of other
unsecured creditors. The Debtors strongly dispute GroupM's positions set forth above, and
reserve all rights to contest them if the Settlement Agreement is not approved, and nothing herein
shall constitute a waiver of any arguments or defenses against GroupM in connection with this
dispute.  At the same time, however, the Debtors understand the substantial benefit to the estates
if these disputes can be resolved through the Settlement Agreement on a prompt basis to avoid
the risk and expense of litigation and to provide the Debtors the liquidity needed to achieve a
sale closing.

18.      In resolution of the foregoing disputes, the parties have agreed to the terms set forth
in the Settlement Agreement attached hereto as **Exhibit B**.

19.      The principal terms of the Settlement are as follows:[4]

(a)      The April Setoff Agreement and the May Setoff Agreement shall be
ratified, and any claim to avoid either of the Disputed Offsets released.

(b)      The parties shall enter into Setoff Agreements for June and July payments
and conclude performance under the May Setoff Agreement.

(c)      Within two (2) business days of entry of an Order approving this
Agreement, the GroupM Companies shall make a payment in the amount
of $14,647,650, reflecting a credit in the amount of $4,650,000.00 against
the January payments owed by Videology to certain Group M Companies
for January 2018 services.  The payment amount is subject to
reconciliation and adjustment of items not yet cleared or resolved;
GroupM may hold back 5% of the payment amount ($732,382.50)
pending full adjustment/reconciliation if not concluded by the time of
Court approval.

---

[4]  While this description of the principal terms of the Settlement is intended to be accurate, in the event of any
discrepancy between this description and the Settlement Agreement, the Settlement Agreement shall control.

57731/0003-15889641v1

## Relief Requested

20.     By this Motion, the Debtors seek the entry of an order, pursuant to Fed. R. Bankr.

P. 9019(a), approving the Settlement and authorizing the Parties to take all actions necessary to

effectuate the Settlement without need of further order by this Court.

## Basis for Relief Requested

21.     Fed. R. Bankr. P. 9019(a) provides that on "motion…and after notice and a

hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

Settlements are favored in the bankruptcy context to "minimize litigation and expedite the

administration of a bankruptcy estate." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). The

approval of a settlement "is within the discretion of the bankruptcy court." *In re World Health

Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In exercising this discretion, the

bankruptcy court must determine whether the compromise is fair, reasonable, and in the best

interest of the estate." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005).

22.     The Third Circuit has established four factors to guide the bankruptcy court's

evaluation of a proposed settlement:  (a) the probability of success in litigation; (b) the likely

difficulties in collection; (c) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors.

*Martin*, 91 F.3d at 393. When applying these factors, a bankruptcy court does not need to

conduct a "mini-trial" on the merits, and should not substitute its judgment for that of the trustee

or debtor in possession. *Key3Media Grp., Inc.*, 336 B.R. at 93; *In re Neshaminy Office Bldg.

Associates*, 62 B.R. 798, 803 (E.D. Pa. 1986). Instead, the bankruptcy court should "canvass the

-8-

issues to see whether the settlement falls below the lowest point in the range of reasonableness."

*Key3Media Grp., Inc.*, 336 B.R. at 93.  As set forth below, the Settlement is fair, reasonable and

in the best interests of the Debtors' estates, and should be approved as a sound exercise of the

Debtors' business judgment, applying the four factors recognized by the Third Circuit.

23.    *First*, while the Debtors believe they would ultimately be successful in litigation

against GroupM, litigation is inherently uncertain and costly.  In addition, as demonstrated

above, GroupM has asserted numerous arguments as to why the amounts that the Debtors assert

are owed to the estate are not subject to avoidance, including setoff, recoupment and earmarking

defenses and the asserted inability to demonstrate net improvement in position. Thus, this factor

weighs in favor of approving the Settlement.

24.    *Second*, while the Debtors believe that they would be able to execute succesfully

against GroupM on any judgment obtained, the key problem here is timing.  By the time the

Debtors collected any any judgment against GroupM, it would be too late to salvage the Debtors

as a going concern.  This factor weighs heavily in favor of approving the Settlement.

25.    *Third*, any ensuing litigation would be complex and potentially protracted.  It

would also cause management to focus on fighting with GroupM, as opposed to focusing on

maximizing the value of the businesses through an orderly sale process.  This factor also weighs

heavily in favor of approving the Settlement.

26.    *Fourth*, and most importantly, there is little doubt that the Settlement

Agremeement favors the interests of creditors.  As described above, without the Settlement

Agreement, it would be difficult to obtain payment of the amounts owed by GroupM without

litigation, and the results of litigation could come too late to salvage the Debtors as a going concern and to conduct a sale process.  Moreover, as demonstrated by the defenses to litigation GroupM would assert, the outcome of litigation against GroupM to avoid the pre-petition setoff arrangements is not certain, and the GroupM unsecured claim would in any event form a substantial portion of the pool of unsecured claims.  For these reasons, the Debtors submit that the Settlement Agreement is an exercise of the Debtors' sound business judgment.

### Notice

27.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' pre-petition secured lenders; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the DIP lender; (e) counsel to the prepetition secured lenders; and (f) parties who have requested notice pursuant to Fed. R. Bankr. P. 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

### No Prior Request

28.     No prior request for the particular relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached as **Exhibit A** hereto, (a) granting the Motion, (b) approving the Settlement Agreement, (c) authorizing the parties to the Settlement Agreement to take all actions necessary to effectuate the Settlement without the need for further order by this Court, and (d) granting such other and further relief as the Court deems just and proper.

-10-

Dated: May 21, 2018

COLE SCHOTZ P.C.

 _/s/ G. David Dean_
G. David Dean (No. 6403)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
ddean@coleschotz.com
preilley@coleschotz.com

- and -

Irving E. Walker
300 E. Lombard Street, Suite 1450
Baltimore, MD  21202
Telephone: 410.230.0660 Fax
Facsimile: 410.528.9400
iwalker@coleschotz.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

57731/0003-15889641v1