# EXHIBIT B

**Settlement Agreement**

## AGREEMENT FOR POST-BANKRUPTCY TRANSACTIONS

THIS AGREEMENT ("Agreement") is made by and among Group M Worldwide, LLC, a Delaware corporation ("GroupM") and each of the affiliated entities that are included within the GroupM network of companies (each such entity, a "GroupM Company", and collectively, the "GroupM Companies"), and Videology, Inc., a Delaware corporation ("Videology"), Lucidmedia Networks, Inc., a Delaware corporation ("Lucid"), Collider Media, Inc., a Delaware corporation ("Collider"), Videology Media Technologies, LLC, a Delaware limited liability company ("VMT"), and Videology, Ltd., a company organized under the laws of England and Wales ("Videology UK" and together with Videology, Lucid, Collider, and VMT, each a "Videology Company" and collectively, the "Videology Companies", and together with the GroupM Companies, each a "Party" and collectively, the "Parties").

### Recitals

A.  The GroupM Companies purchase certain goods and services from one or more of the Videology Companies ("Customer Orders"). In connection with the Customer Orders, from time to time, any one or more of the GroupM Companies is owed obligations from any one or more of the Videology Companies and is entitled to compensation from any one or more of the Videology Companies, or has or intends to enter into arrangements with one or more of the Videology Companies pursuant to which one or more of the GroupM Companies provides consideration to one or more of the Videology Companies (collectively, the "Customer Claims").

B.  On or about March 23, 2018, the secured lenders of the Videology Companies (the "Videology Lenders") issued notices of default to the Videology Companies under the Videology Lenders' loan agreements with the Videology Companies, and thereafter terminated the revolving line of credit facility on which the Videology Companies previously depended for liquidity to support the conduct of their business (the "Default Event"). Upon the occurrence of the Default Event, the ability of the Videology Companies to meet their obligations to the GroupM Companies to fulfill Customer Orders and to pay the Customer Claims was in jeopardy.

C.  In order for the GroupM Companies to be willing to continue to do business with the Videology Companies after the Default Event, the Parties entered into a Setoff Agreement dated April 30, 2018 (the "April Agreement"), and a second Setoff Agreement dated May 8, 2018 (the "May Agreement"). Under the April Agreement and the May Agreement, the Parties agreed to net the obligations owed by the Videology Companies to the GroupM Companies against the amounts owed to the Videology Companies by the GroupM Companies, and the GroupM Companies paid the balance owed to the Videology Companies.[1]

D.  On May 5, 2018, the Videology Companies entered into an Asset Purchase Agreement dated May 4, 2018 with Amobee, Inc.(the "Stalking Horse Purchaser") for the sale of substantially all of the business and assets of the Videology Companies, subject to certain terms

---

[1] The May Agreement was intended to cover pre-petition amounts, and thus, the May Agreement provides for 1/3 of the estimated amounts due on each side for the month of May.

and conditions, including approval of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

E.   On May 10, 2018 (the "Petition Date"), the Videology Companies filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the Bankruptcy Court, with the cases being jointly administered under Case No. 18-11120 (BLS) (together, the "Chapter 11 Case").

F.   As of the Petition Date, the Videology Companies claimed that the GroupM Companies owed the Videology Companies the amounts set forth in **Exhibit A** to this Agreement (the "GroupM Obligations"), and the Group M Companies claimed that the Videology Companies owed the GroupM Companies the amounts set forth in **Exhibit B** to this Agreement. The GroupM Companies are the largest customer of the Videology Companies, and are also the holders of the largest claim in the Chapter 11 Case.

G.   The GroupM Companies have asserted certain defenses to the payment of the GroupM Obligations.  The Videology Companies dispute those defenses but recognize that absent this Agreement, the GroupM Companies are unwilling to pay the GroupM Obligations.  If GroupM's payment of the GroupM Obligations were to be delayed due to litigation, it is likely that the Videology Companies would not have sufficient funds for the operation of their business through the anticipated date of the closing of a sale of their business to the Stalking Horse Purchaser or such other purchaser that may be the successful bidder in the pending sale process.

H.   In addition, this Agreement provides the GroupM Companies adequate assurance that the Videology Companies will be able to meet their post-Petition Date obligations to fulfill the Customer Orders.

WHEREFORE, the Parties hereby agree as follows:

1.   Ratification of April Agreement.  All of the terms and conditions of the April Agreement and the indebtedness and other obligations evidenced thereby are hereby ratified and confirmed in all respects and the April Agreement remains in full force and effect.  The estate hereby releases the GroupM Companies of any and all claims arising under or related to the April Agreement, including for any claims under Section 544, 547, 548, 549, 550 and 553 of the United States Bankruptcy Code with respect to the setoff of amounts due to Videology UK in the estimated amount of GBP 4,995,424 provided for in the April Agreement.[2]  For the avoidance of doubt, this release is expressly limited to the April Agreement, and the Parties reserve all rights and defenses with respect to rights of setoff and other defenses with respect to other invoices not covered by the April Agreement.

2.   Ratification of May Agreement. Except as set forth in section 3 below with respect to the payee of remaining May amounts, all of the terms and conditions of the May Agreement and the indebtedness and other obligations evidenced thereby are hereby ratified and confirmed in all respects and the May Agreement remains in full force and effect.  Except with

---

[2] A reconciliation of this estimated figure is still required, as it was based on an estimated invoice from GroupM to Videology which has not yet been received for April 2018.

respect to any unperformed payment obligations under the May Agreement, the estate hereby releases the GroupM Companies of any and all claims arising under or related to the May Agreement including any claims under Sections 544, 547, 548, 549, 550 and 553 of the United States Bankruptcy Code with respect to the setoff of amounts due to Videology UK in the estimated amount of GBP 2,065,894.54 provided for in the May Agreement. For the avoidance of doubt, this release is expressly limited to the May Agreement, and the Parties reserve all rights and defenses with respect to rights of setoff and other defenses with respect to other invoices not covered by the May Agreement.

3.  **Setoff Agreement for Post-Petition Portion of May, June and July, 2018 Payments**. The Videology Companies and GroupM Companies agree that any and all payments owed by Group M Companies to Videology UK in respect of Customer Orders placed by GroupM Companies during the estimated post-petition portion of May (i.e., the 2/3 not provided for in the May Agreement), June and July 2018, respectively, will each separately be offset monthly against any and all payments owed by Videology UK to GroupM Companies for the post-period portion of May, June and July, respectively. The setoffs provided for in this paragraph shall apply to each of the three monthly periods separately and GroupM Companies shall pay Videology UK the net amounts owed based on the contemplated setoffs when the amounts are otherwise due pursuant to standard terms. The Parties estimate that the setoff agreements for these periods will result in positive cash flow to Videology UK as follows:

   a. Post-Petition May Period (as contemplated under the May Agreement):
      i. Videology UK Invoices: $5,887,000
      ii. GroupM Invoice Amounts: $4,525,000
      iii. Net Amount Owed to Videology Companies: $1,362,000
   b. June 2018:
      i. Videology UK Invoices: $8,945,000
      ii. GroupM Invoice Amounts: $6,876,000
      iii. Net Amount Owed to Videology Companies: $2,069,000
   c. July 2018:
      i. Videology UK Invoices: $7,907,000
      ii. GroupM Invoice Amounts: $6,086,000
      iii. Net Amount Owed to Videology Companies: $1,821,000

The amounts above are good faith estimates. The exact amounts owed during the above periods shall have no impact on the obligations under this Agreement or its enforceability.

4.  **GroupM Payment**. As consideration for the matters contemplated herein, and to further induce the Videology Companies to enter into this Agreement, within two (2) business days of entry of an Order approving this Agreement, the GroupM Companies shall make a payment in the amount of $14,647,650 (the "Payment"), subject to adjustment/reconciliation as set forth below, reflecting a credit in the amount of $4,650,000.00 against the January payments owed by Videology UK to certain Group M Companies for January 2018 services. The payment shall be made in good and immediately available United States Dollars pursuant to written instructions from the Videology Companies provided to the GroupM Companies prior to the scheduled date for payment. The Parties shall make good faith efforts to reconcile fully the amounts due comprising of the Payment in advance of Bankruptcy Court approval of this Agreement (the

3

"Approval Date"). If the Parties are unable, despite diligent efforts, to reconcile fully the Payment by the Approval Date, GroupM shall be pay 95% of the Payment amount ($13,915,267) and hold back 5% of the Payment amount ($732,382.50) pending full reconciliation. Once the reconciliation is completed, GroupM shall pay any remaining balance of the Payment due to the Videology Companies, if applicable, and the Videology Companies shall return any overpayment of the reconciled amount to GroupM, if applicable. The Parties agree to cooperate fully with each other to complete the reconciliation as soon as practicable. If a dispute arises after the Approval Date with respect to any reconciliation that is required after the Approval Date, the Parties shall request that the Bankruptcy Court resolve the dispute.

5.  Bankruptcy Court Approval. This Agreement, and each of the Parties respective obligations hereunder, shall be conditioned upon and subject to the approval of the Bankruptcy Court. If the Bankruptcy Court does not approve this Agreement, this Agreement shall be null, void and of no force and effect.

6.  Notices. All notices, requests, demands, approvals, consents and other communications provided for by this Agreement shall be in writing and shall be deemed to have been given (a) when hand delivered, or (b) if sent same day or overnight recognized commercial courier service, when received or rejected, addressed to the address of the parties stated below or to such changed address as such party may have fixed by notice; provided, that any notice of change of address shall be effective only upon receipt.

|  |  |
|---|---|
| GroupM Companies Address for Notice: | [_____]<br>[_____]<br>[_____]<br>Attention: Stuart Diamond<br>Facsimile: [_____] |
| With a copy to: | Pachulski Stang Ziehl & Jones LLC<br>150 California Street, 15th Floor<br>San Francisco, CA 94111-4500<br>Attn: Debra Grassgreen, Esq.<br>Facsimile: 415.263.7010 |
| Videology Companies Address for Notice: | Videology, Inc.<br>1500 Whetstone Way, Ste 500<br>Baltimore, MD 21230<br>Attention: Legal Dept.<br>email: legal@videologygroup.com |
| With a copy to: | Cole Schotz P.C.<br>300 E. Lombard Street, Suite 1450<br>Baltimore, MD 21202<br>Attn: Irving Walker, Esq.<br>Facsimile: 410.528.9400 |

7. <u>Amendments</u>.  This Agreement may not be amended, modified or terminated orally or in any manner other than by an agreement signed by each of the Parties hereto or their respective successors in interest.

8. <u>Partial Invalidity</u>.  If any provision of this Agreement is held to be invalid or unenforceable as against any person or under certain circumstances, the remainder of this Agreement and the applicability of such provision to other persons or circumstances shall not be affected thereby.  Each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  The Parties hereto shall work together in good faith to replace any such invalid, illegal or unenforceable provision with terms and provisions which are valid, legal and enforceable and reflect the intention of the Parties.

9. <u>Counterparts</u>.  This Agreement may be executed and delivered in any number of counterparts, each of which shall constitute an original, but all of which, taken together, shall constitute but one and the same instrument.

10. <u>Facsimile/PDF Signatures</u>.  In order to expedite the transaction contemplated herein, telecopied or PDF signatures may be used in place of original signatures on this Agreement.  Each Party intends to be bound by the signatures on the telecopied or PDF copy of the document, is aware that the other Parties hereto will rely on the telecopied or PDF signatures, and hereby waives any defenses to the enforcement of the terms of this Agreement based on the form of signature.

11. <u>Binding Effect</u>.  This Agreement shall be binding upon and inure to the benefit of each of the Parties hereto and their respective successors and assigns.

12. <u>Headings</u>.  The headings which have been used throughout this Agreement have been inserted for convenience of reference only and should not be construed in interpreting this Agreement.  Words of any gender used in this Agreement shall include any other gender and words in the singular shall include the plural, and vice versa, unless the context requires otherwise.  The words "herein," "hereof," "hereunder" and other similar compounds of the words "here" when used in this Agreement shall refer to the entire Agreement and not to any particular provision or section.

13. <u>Construction</u>.  This Agreement shall be given a fair and reasonable construction in accordance with the intentions of the Parties hereto.  Each Party hereto acknowledges that it has participated in the drafting of this Agreement, and any applicable rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not be applied in connection with the construction or interpretation hereof.  For purposes of construction of this Agreement, any provisions which are deleted or crossed out shall be treated as if never included herein.

14. <u>Jurisdiction</u>.

    a. FOR THE PURPOSES OF ANY SUIT, ACTION OR PROCEEDING INVOLVING THIS AGREEMENT, THE PARTIES EACH HEREBY EXPRESSLY SUBMITS TO THE JURISDICTION OF THE BANKRUPTCY COURT AND CONSENT THAT ANY ORDER, PROCESS, NOTICE OR MOTION OR OTHER APPLICATION TO OR BY ANY

SUCH COURT OR A JUDGE THEREOF MAY BE SERVED AS PERMITTED BY LAW, AND THE PARTIES EACH AGREES THAT SUCH COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY SUCH SUIT, ACTION OR PROCEEDING COMMENCED BY ANOTHER PARTY HERETO.

      b.    EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT BROUGHT IN THE BANKRUPTCY COURT AND HEREBY FURTHER IRREVOCABLY WAIVES ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

    15.    <u>Governing Law</u>.  This Agreement and the exhibits and schedules annexed hereto, shall be governed by, interpreted under, and construed and enforced in accordance with, the internal laws of the State of Delaware without regard to principles of conflicts of law.

    16.    <u>Incorporation by Reference</u>.  The exhibits and schedules to this Agreement are incorporated herein by reference and made a part hereof.

          [remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the date first written above.

GROUPM COMPANIES

WITNESS:

By:  GROUP M WORLDWIDE, LLC

By: _____
Name: Stuart Diamond
Title: _____

[insert each other GroupM Company or receive a corporate resolution that reflects a grant of authority to GroupM Worldwide to sign on behalf of all other entities]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the date first written above.

| WITNESS: | VIDEOLOGY, INC. |
|---|---|
| _____ | By: _____<br>Name: _____<br>Title: _____ |
| WITNESS: | LUCIDMEDIA NETWORKS, INC. |
| _____ | By: _____<br>Name: _____<br>Title: _____ |
| WITNESS: | COLLIDER MEDIA, INC. |
| _____ | By: _____<br>Name: _____<br>Title: _____ |
| WITNESS: | VIDEOLOGY MEDIA TECHNOLOGIES, LLC |
| _____ | By: _____<br>Name: _____<br>Title: _____ |
| WITNESS: | VIDEOLOGY, LTD. |
| _____ | By: _____<br>Name: _____<br>Title: _____ |

Exhibit A

<u>GroupM Obligations</u>

[To be provided]

Exhibit B

<u>Videology Obligations</u>

[To be provided]