**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

In re:                                                          :    Chapter 11
                                                                :
VIDEOLOGY, INC., *et al.*,[1]                                   :    Case No. 18-11120 (BLS)
                                                                :
                                                                :    (Jointly Administered)
                                                                :
                                          Debtors.              :
                                                                :    Re: D.I. 39
                                                                :
------------------------------------------------------------- x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
DEBTORS' MOTION FOR ORDERS (I)(A) APPROVING BIDDING PROCEDURES
FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B)
APPROVING STALKING HORSE AGREEMENT AND BID PROTECTIONS, (C)
SCHEDULING AUCTION FOR, AND HEARING TO APPROVE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (D) APPROVING FORM AND
MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING, (E)
APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (F)
GRANTING RELATED RELIEF AND (II)(A) APPROVING SALE OF DEBTORS'
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF
UNEXPIRED LEASES AND EXECUTORY CONTRACTS, AND (C) GRANTING
<u>RELATED RELIEF</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Videology, Inc., *et al.*, as debtors and debtors-in-possession (the "<u>Debtors</u>"), by and through its proposed counsel Cooley LLP and Whiteford, Taylor & Preston LLC, hereby submits this objection (this "<u>Objection</u>") to the Debtors' motion [D.I. 39] (the "<u>Motion</u>")[2] for orders approving, *inter alia*, bidding procedures (the "<u>Proposed Bidding Procedures</u>") for the sale of substantially all of the Debtors' assets.  In support of this Objection, the Committee respectfully states as follows:

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Videology, Inc. (2191), Collider Media, Inc. (8602), Videology Media Technologies, LLC (6243), LucidMedia Networks, Inc. (8566); and Videology, Ltd., a company organized under the laws of England and Wales. The address of the Debtors' corporate headquarters is 1500 Whetstone Way, Suite 500, Baltimore, MD 21230.

[2]      Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

## PRELIMINARY STATEMENT[3]

The Committee supports the Debtors' pursuit of a value-maximizing sale pursuant to bid procedures that facilitate a fair, robust, and competitive process.  Certain provisions of the bid procedures proposed by the Debtors, however, will chill bidding and are not beneficial to the estates or creditors.  As such, the Committee is compelled to object.

The Committee specifically takes issue with the size and scope of the bid protections and the Debtors' failure to provide the Committee with a seat at the table during the sale process. Indeed, the Debtors propose to grant the Stalking Horse Bidder an excessive Break-Up Fee that represents 4.8% of the cash portion of the Purchase Price, after accounting for downward adjustments to the cash consideration caused by the contemplated implementation of the GroupM settlement.  The Proposed Bid Procedures also authorize payment of the Break-Up Fee and a $500,000 Expense Reimbursement to the Stalking Horse Bidder in an unreasonably broad set of circumstances, including if the Debtors are forced to close a transaction with an alternative bidder after the Stalking Horse Bidder breaches the Stalking Horse Agreement.  In addition, the Proposed Bid Procedures fail to provide the Committee with consultation rights, notwithstanding that the Committee represents the fulcrum creditor constituency in these cases.  The Proposed Bid Procedures and Stalking Horse Agreement should not be approved unless these defects are remedied and the further modifications discussed herein are made.

The Committee is in discussions with the Stalking Horse Bidder concerning these issues and is hopeful that certain of these deficiencies can be remedied.  In the event they are not, the

---

[3]    Capitalized terms used but not defined in the Preliminary Statement shall have the respective meanings ascribed to them in this Objection.

Committee reserves all of its rights to raise these and other issues in the context of the Sale Motion.

## BACKGROUND

1.      On May 10, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and properties as debtors-in-possession.  No trustee or examiner has been appointed in these cases.

2.      On May 17, 2018, the Committee was appointed in these cases by the Office of the United States Trustee for the District of Delaware, consisting of the following seven members: (i) GroupM UK Digital Ltd. ("GroupM"); (ii) Beachfront Media, LLC; (iii) FMEX LLC dba Futures Media; (iv) SpotX, Inc.; (v) Cheseapeake Paperboard Centre LLC c/o 28 Walker Development; (vi) TEADS France SAS; and (vii) Telaria, Inc.  That same day, the Committee selected Cooley LLP as its proposed lead counsel and Whiteford, Taylor & Preston LLC as its proposed Delaware counsel.  Thereafter, the Committee selected Gavin Solmonese LLC as its proposed financial advisor.

### The Stalking Horse Agreement

3.      Pursuant to the terms of the Stalking Horse Agreement dated May 4, 2018, the Debtors seek to sell substantially all of their assets to Amobee, Inc. ("Amobee" or the "Stalking Horse Bidder"), subject to higher and/or otherwise better offers.

4.      The cash consideration proposed to be provided by the Stalking Horse Bidder as part of the Purchase Price – $45 million (the "Cash Consideration") – is subject to significant downward adjustments.  The Cash Consideration will be reduced by the amount by which the Accounts Receivable that are fully and effectively assigned to the Stalking Horse Bidder at

Closing is less than $37 million.  *See* Stalking Horse Agreement, § 3.1(a).  This may lead to a significant reduction in the Cash Consideration because according to the Debtors' latest budget, the Accounts Receivable are projected to be only $20.2 million as of July 21, 2018.  *See* D.I. 111-1.

**The Proposed Sale Timeline and Bid Procedures**

5.    The Proposed Bid Procedures provide for a break-up fee (the "Break-Up Fee") in the amount of 3% of the *maximum* Cash Consideration ($1,350,000) as well as an Expense Reimbursement of up to $500,000.   In order to participate in the Auction, bidders must, among other things, submit a bid that equals or exceeds the Purchase Price *plus* $100,000, *plus* the Break-Up Fee, *plus* the Expense Reimbursement.   Thus, the minimum bid required to be considered a Qualified Bidder is at least $1,950,000 more than the Cash Consideration.  *See* Proposed Bidding Procedures, § C.viii.

6.    The Debtors have proposed that the sale of substantially all of their assets be conducted consistent with the following dates:

- July 2, 2018: deadline to submit bid for all or a portion of the Debtors' assets, deadline to object to the Sale, and deadline to object to adequate assurance of a Successful Bidder other than the Stalking Horse Bidder;

- July 9, 2018: Auction (if bids are received); and

- July 17, 2018: Sale Hearing.

**LIMITED OBJECTION**

A.    **The Stalking Horse Bidder Protections Are Excessive And Will Chill the Bidding**

7.    The Debtors have requested approval of protections for the Stalking Horse Bidder which are excessive, unnecessary and counterproductive to the sale process.  In the event the Court determines that the approval of the Proposed Bid Procedures is appropriate at this juncture,

certain of the procedures and relief sought in the Motion are objectionable and should be modified.

8.     The Committee is not opposed to a break-up fee equal to 3% of the cash consideration in the Purchase Price.  But that is not what is proposed here.  The Proposed Bid Procedures require bidders to include a $1,350,000 Break-Up Fee in order to be considered a Qualified Bidder.  *See* Proposed Bid Procedures, § C.viii.  In light of the adjustments that will occur as a result of the GroupM settlement,[4] the Cash Consideration will likely decrease by $20.2 million.  Thus, the Break-Up Fee equals 4.8% of the Cash Consideration.  The unreasonably high Break-Up Fee will chill bidding by placing the Stalking Horse Bidder in a uniquely advantageous position and is nothing more than an outsized bid increment that benefits the Stalking Horse Bidder at the expense of the estates.

9.     Break-up fees must be carefully scrutinized in light of the circumstances of the case.  *See, e.g.*, *In re Am. West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (stating that "the proposed break-up fee must be carefully scrutinized to insure that the [d]ebtor's estate is not unduly burdened and that the relative rights of the parties in interest are protected.") (internal citation omitted).  In limited circumstances, break-up fees, like other administrative expenses, are permissible upon demonstrating that the fees were necessary to preserve the value of the estate and/or to ensure a competitive auction process.  *See, e.g.*, *Calpine v. O'Brien Envtl. Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999) ("the allowability of break-up fees, like that of other administrative expenses, depends upon the

---

[4] On May 21, 2018, the Debtors filed a motion seeking approval of a settlement agreement by and between the Debtors and GroupM pursuant to which, *inter alia*, GroupM has agreed to pay the Debtors $14,647,650 of the $19,297,650 that the Debtors contend is due and owing, with GroupM being permitted to exercise setoff rights as to the balance purportedly due and owing to the Debtors.  *See* D.I. 89.

requesting party's ability to show that the fees were actually necessary to preserve the value of the estate"). In connection with approving a break-up fee, as with any other administrative expense, the claimant has "the burden of proving that its claim was for 'actual, necessary costs and expenses of preserving the estate.' The words 'actual' and 'necessary' have been construed narrowly: the debt must benefit the estate and its creditors." *Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992), *reh'g denied*, 983 F.2d 1060 (5th Cir. 1993).

10.     Courts in this district generally find that 3% break-up fees are reasonable. *In re Dextera Surgical Inc.*, No. 17-12913 (KJC) (Bankr. D. Del. Jan. 5, 2018) (approving break-up fee of $519,000 [or 3% of $17.3 million sale price]); *In re CMTSU Liquidation*, No. 17-10772 (BLS) (Bankr. D. Del. May 2, 2017) (approving a break-up fee of 3%); *In re TerraVia Holdings Inc.*, No. 17-11655 (CSS) (Bankr. D. Del. Aug. 22, 2017) (approving break-up fee of 2.5%); *In re BPS US Holdings Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. Nov. 30, 2016) (approving break-up fee equal to 3%); *In re VSI Liquidating*, No. 16-11290 (CSS) (Bankr. D. Del. June 28, 2016) (approving break-up fee equal to 3%); *In re Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. Aug. 31, 2016) (approving break-up fee of 3%); *In re Synagro Techs., Inc.*, No. 13-11041 (BLS) (Bankr. D. Del. May 13, 2013) (approving break-up fee equal to 3%); *see also In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015), Hr'g Tr. 106:2-107:7 (observing that "we typically have a cap of 3 percent" in denying a break-up fee to a secured creditor stalking horse bidder). The Debtors have failed to meet their burden of demonstrating that the Break-Up Fee is an actual and necessary expense and it should not be approved as proposed.

11.     The Committee also objects to payment of the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder even if the agreement is terminated due to the Stalking Horse Bidder's failure to close the Sale or breach of the agreement. *See* Stalking Horse Agreement, §§ 4.6(a) (providing for payment of Break-Up Fee and Expense Reimbursement upon the closing of an "Alternative Transaction"), Annex B (broadly defining "Alternative Transaction" to include the Debtors' sale of assets to "any Person other than the [Stalking Horse Bidder]"). Accordingly, the Bidding Procedures Order should be modified to make clear that the Break-Up Fee and Expense Reimbursement shall not be paid the Stalking Horse Bidder in the event the Stalking Horse Agreement is terminated due to the Stalking Horse Bidder's breach of the agreement, including by its inability to close the Sale.

**B.      The Proposed Deadlines Should be Extended and the Committee Should Be Included as a Consultation Party**

12.     The Proposed Bid Procedures currently provide for a two-week period between the Bid Deadline and the Sale Hearing. The significant gap between these two dates may prejudice potential bidders who are conducting diligence in furtherance of a contemplated transaction under an expedited timeframe. The Committee proposes that the proposed sale deadlines be modified as follows, to give the Debtors, the Committee and their professionals the opportunity to conduct, and proposed bidders to participate in, a fulsome process:

|  | Proposed Bid Procedures | Modified Proposed Date |
|---|---|---|
| Bid Deadline | July 2, 2018 | July 11, 2018 |
| Adequate Assurance Objection Deadline | July 2, 2018 | July 13, 2018 |
| Auction | July 9, 2018 | July 13, 2018 |
| Sale Hearing | July 17, 2018 | July 17, 2018 |

13. Notably, the Committee is not at this time seeking to extend the outside date for the conclusion of the sale process. The Committee reserves all rights to subsequently petition the Court for such further extension to the extent necessary to maximize value.

14. In addition, the Proposed Bid Procedures should be modified to include the Committee as a notice and consultation party. Currently, the Proposed Bid Procedures do not even allow the Committee to attend the Auction. As the representative of the fulcrum creditor constituency, the Committee should be authorized to weigh in on important issues at the Auction such as who constitutes a Qualified Bidder.

### C. <u>The Stalking Horse Agreement Should Not Be Approved Unless Modified</u>

15. Given that the Motion seeks approval of the Stalking Horse Agreement, and that the Proposed Bid Procedures contemplate that if no bids are received, the Debtors will seek approval of such agreement, or alternatively, that other bidders may bid off of the form of Stalking Horse Agreement, the agreement should not be approved unless these key matters are addressed or clarified:

- **Allocation**: The Debtors and Stalking Horse Bidder seek to allocate the Purchase Price among the Seller Companies prior to the Auction (if applicable) or Sale Hearing. *See* Stalking Horse Agreement, § 3.1(c). Although the Committee has only recently commenced its investigation into the validity and extent of the prepetition lenders' liens, it believes that the Acquired Assets may include unencumbered assets. Accordingly, the Stalking Horse Agreement should state that the allocation is being made solely for tax purposes and is not binding on the estates for any other purpose.

- **Clarification of the Purchase Price**: As currently structured, the Purchase Price could be interpreted as deducting the value of the Assumed Liabilities from the Cash Consideration. *See* Stalking Horse Agreement, § 3.1(a). The Stalking Horse Agreement should be modified to make clear that the Assumed Liabilities do not reduce the Cash Consideration.

**D.**     **Additional Modifications and Reservation of Rights**

16.     The Committee incorporates by reference the proposed modifications set forth on **Exhibit A** hereto, and respectfully requests that the Court modify the Proposed Bid Procedures consistent therewith and this Objection.

17.     The Committee reserves the right to raise additional issues with the Proposed Bid Procedures at the hearing on the same.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Committee respectfully requests entry of an order (i) modifying the

Proposed Bid Procedures as requested herein, and (ii) granting such other and further relief as the

Court deems just and proper.

Dated: June 1, 2018
          Wilmington, Delaware

Respectfully submitted,

*/s/ Katherine Good*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Stephen B. Gerald (No. 5857)
WHITEFORD, TAYLOR & PRESTON LLC
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, Delaware 19801-3700
Telephone:   (302) 353-4144
Facsimile:   (302) 661-7950
Email:        csamis@wtplaw.com
                kgood@wtplaw.com
                sgerald@wtplaw.com

-and-

Seth Van Aalten, Esq.
Michael Klein, Esq.
Max Schlan, Esq.
Evan Lazerowitz, Esq.
COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036-7798
Telephone:   (212) 479-6000
Facsimile:   (212) 479-6275
Email:        svanaalten@cooley.com
                mklein@cooley.com
                mschlan@cooley.com
                elazerowitz@cooley.com

*Proposed Counsel for the Official Committee of*
*Unsecured Creditors*