**Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------x
                                                  :    Chapter 11
In re:                                            :
                                                  :    Case No. 18-11120 (BLS)
VIDEOLOGY, INC., et al.,¹                          :
                                                  :    Jointly Administered
                 Debtors.                         :
                                                  :    Related to Docket No. ——39
-----------------------------------------------------------x
```

**ORDER (A) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT;
(B) APPROVING PROCEDURES IN CONNECTION WITH
THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (C)
SCHEDULING THE RELATED AUCTION AND HEARING
TO CONSIDER APPROVAL OF SALE; (D) APPROVING PROCEDURES
RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; (E) APPROVING THE FORM AND MANNER
OF NOTICE THEREOF; (F) APPROVING BREAKUP FEE AND EXPENSE
REIMBURSEMENT; AND (G) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "Motion")[2] of the above-

captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order

pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the

"Bankruptcy Code"),  Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of

Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-

1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the

District of Delaware (the "Local Rules") (A) approving "stalking horse" asset purchase

agreement (the "Asset Purchase Agreement"); (B) approving procedures in connection with the

---

[1] The The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Videology, Inc. (2191), Collider Media, Inc. (8602), Videology Media Technologies, LLC (6243),  LucidMedia Networks, Inc. (8566), and Videology, Ltd., a company organized under the laws of England and Wales.  The address of the Debtors' corporate headquarters is 1500 Whetstone Way, Suite 500, Baltimore, MD 21230..

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Motion, as applicable.

sale of all or substantially all of the Debtors' assets; (C) scheduling the related auction and

hearing to consider approval of sale free and clear of liens, claims and interests; (D) approving

procedures related to the assumption of certain executory contracts and unexpired leases; (E)

approving the form and manner of notice thereof; (F) approving Breakup Fee and Expense

Reimbursement; and (G) granting related relief; and the Court having found that (i) the Court has

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is

a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion was sufficient

under the circumstances; and after due deliberation the Court having determined that the relief

requested in the Motion, to the extent set forth herein, is in the best interests of the Debtors, their

estates and their creditors; and good and sufficient cause having been shown;

### IT IS FURTHER FOUND AND DETERMINED THAT:[3]

A.      The Debtors have articulated good and sufficient business reasons for the Court to

(i) approve the Bidding Procedures, (ii) approve the Assumption and Assignment Procedures,

(iii) approve the form and manner of notice of the Motion, the Auction and Sale Hearing and (iv)

set the date of the Auction and the Sale Hearing.

B.      Due, sufficient and adequate notice of the relief requested in the Motion and the

relief granted herein has been given in light of the circumstances and the nature of the relief

requested, and no other or further notice thereof is required.  The Debtors' notice of the Motion,

the proposed entry of this order, the Bidding Procedures, the Assumption and Assignment

Procedures, the Auction and the Sale Hearing is appropriate and reasonably calculated to provide

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004 and 6006, and no other or further notice of, or hearing on, the Motion or this Order is required.

        C.       The Debtors' proposed notices of (i) the Sale, (ii) the assumption and assignment of, and Cure Amount (as defined below) for, the executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder (the "<u>Assumed Contracts</u>"), (iii) the Asset Purchase Agreement, (iv) the Successful Bidder and (v) the Bidding Procedures, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required.

        D.       The Bidding Procedures, in the form attached hereto as **Exhibit 1**, and incorporated by reference as if fully set forth in this Order, are fair, reasonable, and appropriate, were negotiated in good faith and at arm's-length by the Debtors and the Purchaser and represent the best method for maximizing the value to be achieved for the Debtors' assets.

        E.       The Assumption and Assignment Procedures, as set forth herein, are reasonable and appropriate.

        **IT IS HEREBY ORDERED THAT:**

        1.       The Motion is GRANTED as set forth herein.

        2.       All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled.

        3.       The Asset Purchase Agreement is approved solely for the purpose of establishing the stalking horse bid for the Debtors' assets.  All substantive rights are reserved for the Sale Hearing.

4.      The Bidding Procedures, attached hereto as **Exhibit 1,** are APPROVED.  The

Debtors are authorized to take any and all actions reasonably necessary or appropriate to

implement the Bidding Procedures.

5.      Except as expressly provided herein, nothing herein shall be construed as a

determination of the rights of any party in interest in these Chapter 11 Cases, including, without

limitation, the Debtors and, the Purchaser, and the official committee of unsecured creditors (the

"Committee").

### The Bid Deadline

6.      The Purchaser shall be the Successful Bidder (as defined in the Bidding

Procedures) unless the following parties receive one or more Qualified Bids in writing, **on or**

**before July 211, 2018 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"): (i) the

Debtors, 1500 Whetstone Way, Suite 500, Baltimore, MD 21230, Attn: Kenneth Tarpey

(ktarpey@videologygroup.com); (ii) proposed counsel to the Debtors, Cole Schotz P.C., 300 E.

Lombard Street, Suite 1450, Baltimore, MD  21202, Attn: Irving Walker, Esq.

(iwalker@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, Delaware

19801, Attn: Patrick J. Reilley, Esq. (preilley@coleschotz.com); (iii) financial advisor to the

Debtors, Berkeley Research Group, LLC, 2049 Century Park East, Suite 2525, Century City, CA

90067, Attn: Bob Duffy (bduffy@thinkbrg.combduffy@thinkbrg.com); and (iv) proposed

counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, 46th Floor, New York,

NY 10036, Attn: Seth Van Aalten, Esq. (svanaalten@cooley.com) and Michael Klein, Esq.

(mklein@cooley.com)   (collectively, the "Bidding Notice Parties").

### Notice of the Sale and the Sale Hearing

7.      By no later than three (3) calendar days after entry of this Order (the "Initial

Mailing Date"), the Debtors (or their agents) shall serve this Order, the Bidding Procedures and

the Sale Notice attached hereto as <u>Exhibit 2</u> by first-class mail, postage prepaid or by email, where available, upon (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets during the past nine (9) months; (b) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Purchased Assets; (c) all federal, state and local environmental or other regulatory authorities that regulate any aspect of the Debtors' business, if any; (d) United States Attorney's office; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (h) counsel to the Prepetition Secured Parties; (i) the U.S. Trustee; and (j) those parties who have filed the appropriate notice requesting notice of all pleadings filed in the Chapter 11 Cases (the "<u>Initial Mailing Service List</u>").  In addition, by the Initial Mailing Date, the Debtors' claims and noticing agent shall post a copy of this Order, the Bidding Procedures and the Sale Notice to the website maintained for the Debtors in these cases.

8.     By June 8, 2018, the "<u>Final Mailing Date</u>"), the Debtors (or their agents) shall serve the Sale Notice by first-class mail, postage prepaid or by email, where available, upon (x) all known creditors other than those given notice pursuant to the Initial Mailing Service List; and (y) all holders of interests in the Debtors.

9.     By the Final Mailing Date, (a) the Debtors (or their agents) shall serve the Counterparties Cure Notice (as defined below) by first-class mail, postage prepaid or by email, where available, upon all counterparties to the Debtors' executory contracts and unexpired leases, and (b) the Debtors' claims and noticing agent shall post the Counterparties Cure Notices (as defined below) to the website maintained for the Debtors in these cases.

10.     In addition, as soon as practicable, but in any event no later than the Final Mailing

Date, the Debtors shall publish the Sale Notice (modified for publication, as necessary) in the

national edition of *USA Today* and such trade or other publications of general circulation as the

Debtors and the Purchaser shall determine in good faith.  Such publication notice shall be

deemed sufficient and proper notice of the Sale to any other interested parties whose identities

are unknown to the Debtors.

11.     The Sale Hearing to approve the sale of the Purchased Assets shall be held on

July 17, 2018 at 11:00 a.m. **(Prevailing Eastern Time)**.

12.     Objections, if any, to the sale of the Purchased Assets ("Sale Objection") must be

filed and with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware,

19801, together with proof of service on or before July 2, 2018 **at 4:00 p.m. (Prevailing**

**Eastern Time)** (the "Sale Objection Deadline") and be served upon: (1) the Debtors, 1500

Whetstone Way, Suite 500, Baltimore, MD 21230, Attn: Kenneth Tarpey

(ktarpey@videologygroup.com); (2) proposed counsel to the Debtors, Cole Schotz P.C., 300 E.

Lombard Street, Suite 1450, Baltimore, MD  21202, Attn: Irving Walker, Esq.,

(iwalker@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, Delaware

19801, Attn: Patrick J. Reilley, Esq., (preilley@coleschotz.com); (3) financial advisor to the

Debtors, Berkeley Research Group, LLC, 2049 Century Park East, Suite 2525, Century City, CA

90067, Attn: Bob Duffy, (bduffy@thinkbrg.com); (4) counsel to Agent for Prepetition Secured

Parties, Buchalter, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, California 90017, Attn:

William Brody, Esq., (wbrody@buchalter.com), and Richards, Layton & Finger, One Rodney

Square, 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight, Esq.

(knight@rlf.com); (5) counsel to the Purchaser, Goodwin Procter LLP, 3 Embarcadero Center,

28th Floor, San Francisco, CA 94111 Attn: Lawrence M. Chu, Esq. (lawchu@goodwinlaw.com),

Alessandra L. Simons, Esq. (asimons@goodwinlaw.com) and Gregory Fox, Esq.

(gfox@goodwinlaw.com) and Womble Bond Dickinson (US) LP, 222 Delaware Avenue Suite

1501, Wilmington, DE 19801 Attn: Matthew P. Ward, Esq. (~~Matthew.Ward@wbd-us.com~~Matthew.Ward@wbd-us.com); (6) proposed counsel to the Committee, Cooley LLP,

1114 Avenue of the Americas, 46th Floor, New York, NY 10036, Attn: Seth Van Aalten, Esq.

(svanaalten@cooley.com) and Michael Klein, Esq. (mklein@cooley.com), and Whiteford,

Taylor & Preston LLC, The Renaissance Centre, Suite 500, 405 North King Street, Wilmington,

DE 19801, Attn: Christopher S. Samis, Esq. (csamis@wtplaw.com) and L. Katherine Good, Esq.

(kgood@wtplaw.com); and  (~~6~~7) the Office of the United States Trustee for the District of

Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: David

Buchbinder, Esq. (~~David.L.Buchbinder@usdoj.gov~~David.L.Buchbinder@usdoj.gov)~~,~~

(collectively, the "Objection Notice Parties").

13.    Failure to file a Sale Objection on or before the Sale Objection Deadline shall be

deemed to be consent for purposes of section 363(f) of the Bankruptcy Code.

**The Auction**

14.    If the Debtors determine that they received one or more Qualified Bids in addition

to the bid made by the Purchaser pursuant to the Asset Purchase Agreement, the Debtors shall

conduct an auction (the "Auction") with respect to the Purchased Assets.  The Auction shall take

place on **July ~~9~~13, 2018 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Cole Schotz

P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE, or such other place as the Debtors

shall identify in a notice filed with the Bankruptcy Court at least 24 hours before the Auction,

and served on all Qualified Bidders, the Purchaser and its counsel, the Prepetition Secured

Parties and their counsel, the U.S. Trustee, and any creditors who provide notice in accordance

with paragraph 15 below.  The Debtors are authorized and subject to the terms of this Order, to take actions reasonably necessary, in the discretion of the Debtors to conduct and implement the Auction.

15.     Only the Debtors, the Prepetition Secured Parties, the Committee, the Purchaser and any other Qualified Bidder, the U.S. Trustee, along with their representatives and counsel, and such other parties as the Debtors shall determine, shall attend the Auction (such attendance to be in person); provided, however, that any creditor may attend (but not participate in) the Auction if they provide the Debtors written notice of their intention to attend the Auction on or before two business days prior to the Auction.  Such written notice must be sent to proposed counsel for the Debtors via electronic mail to Irv Walker, Esq. at iwalker@coleschotz.com  and Patrick Reilley, Esq. at preilley@coleschotz.com. preilley@coleschotz.com, with copies to counsel for the Committee to Seth Van Aalten, Esq. at svanaalten@cooley.com and Michael Klein, Esq. at mklein@cooley.com.

16.     In addition, only the Purchaser and such other Qualified Bidders  will be entitled to make any bids at the Auction.  The Debtors and their professionals shall direct and preside over the Auction in consultation with the Committee, and the Auction shall be transcribed.  The Purchaser (in its capacity as a Qualified Bidder), and each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein and (b) has reviewed, understands and accepts the Bidding Procedures.

17.     Subject to the rights of parties in interest to (i) challenge the Sale or the sale process, (ii) challenge the Debtors' decisions with respect to the sale process and (iii) argue that such decisions are not governed by the "business judgment" standard, or (iv) such other rights as

such parties may have under applicable law, the Debtors may, in consultation with the Committee, (I) select, in their business judgment, pursuant to the Bidding Procedures, the highest or otherwise best offer(s) and the Successful Bidder or Bidders, and (II) reject any bid that, in the Debtors' business judgment, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bidding Procedures or (c) contrary to the best interests of the Debtors and their estates, creditors, interest holders or parties-in-interest.

18.     The Debtors shall file notice of the identity of the Successful Bidder and Back-up Bidder, and the amount of their bids, with the Court by no later than July 10, 2018 at 5:00 p.m. (prevailing Eastern Time).  The same day the Debtors shall serve such notice by fax or email to all contract and lease counterparties and to all creditors who have requested the same in writing and provided their fax number or email address, as applicable, to Debtors' counsel on or before that date and time.

19.     Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Purchaser shall be considered a Qualified Bidder.

20.     The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

**Assumption and Assignment Procedures**

21.     The Assumption and Assignment Procedures are APPROVED as set forth herein.

22.     The Debtors shall serve by first-class mail, postage prepaid on each non-Debtor counterparty to an executory contract and unexpired lease, including without limitation, an

Assumed Contract, a cure notice substantially in the form attached hereto as <u>Exhibit 3</u> (the

"<u>Counterparties Cure Notice</u>") that shall (i) state the cure amount that the Debtors believe is

necessary to assume each executory contract or unexpired lease, including, without limitation,

the Assumed Contracts, pursuant to section 365 of the Bankruptcy Code (the "<u>Cure Amount</u>");

(ii) notify the non-Debtor party that such party's contract or lease may be assumed and assigned

to a purchaser of the Purchased Assets at the conclusion of the Auction; (iii) state the applicable

deadline by which the non-Debtor party must file an objection to the Cure Amount (a "<u>Cure</u>

<u>Amount Objection</u>"), to the assumption and assignment of an Assumed Contract to the Purchaser

(an "<u>Assumption Objection</u>"), and notifying the non-Debtor party that the deadline to file a Sale

Objection is the Sale Objection Deadline; and (iv) state the date of the Sale Hearing and that

Cure Amount Objections, Assumption Objection, and Sale Objections will be heard at the Sale

Hearing, or at a later hearing if so determined by the Debtors in consultation with the Purchaser

or the Successful Bidder (as applicable); <u>provided</u>, <u>however</u>, that the inclusion of a contract,

lease or agreement on the Counterparties Cure Notice shall not constitute an admission that such

contract, lease or agreement is an executory contract or unexpired lease or that such contract,

lease or agreement will be assumed and assigned to the Purchaser or the Successful Bidder (as

applicable).  The estates reserve all of their rights, claims and causes of action with respect to the

contracts, leases and agreements listed on the Counterparties Cure Notice.

     23.     Any objection to the Cure Amount must be filed with the Court and served **so as**

**to be received on or before July 2, 2018 at 4:00 p.m. (Prevailing Eastern Time)** (the "<u>Cure</u>

<u>Amount Objection Deadline</u>") by the following parties:  (1) the Debtors, 1500 Whetstone Way,

Suite 500, Baltimore, MD 21230 (Attn: Daniel J. Smith, <u>dsmith@videologygroup.com</u>;

(2) proposed counsel for the Debtors, Cole Schotz P.C., 300 E. Lombard Street, Suite 1450,

Baltimore, Maryland 21202 (Attn: Irving E. Walker, Esq.), iwalker@coleschotz.com and 500

Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn: Patrick J. Reilley, Esq.),

preilley@coleschotz.com; (3) counsel to the Purchaser, Goodwin Procter LLP, 3 Embarcadero

Center, 28th Floor, San Francisco, CA 94111 Attn: Lawrence M. Chu, Esq.

(lawchu@goodwinlaw.com),Alessandra L. Simons, Esq. (asimons@goodwinlaw.com) and

Gregory Fox, Esq. (gfox@goodwinlaw.com) and Womble Bond Dickinson (US) LP, 222

Delaware Avenue Suite 1501, Wilmington, DE 19801 Attn: Matthew P. Ward, Esq.

(~~Matthew.Ward@wbd-us.com~~Matthew.Ward@wbd-us.com); (4) proposed counsel to the

Committee, Cooley LLP, 1114 Avenue of the Americas, 46th Floor, New York, NY 10036, Attn:

Seth Van Aalten, Esq. (svanaalten@cooley.com) and Michael Klein, Esq. (mklein@cooley.com),

and Whiteford, Taylor & Preston LLC, The Renaissance Centre, Suite 500, 405 North King

Street, Wilmington, DE 19801, Attn: Christopher S. Samis, Esq. (csamis@wtplaw.com) and L.

Katherine Good, Esq. (kgood@wtplaw.com); and (~~4~~5) the Office of the United States Trustee for

the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801

Attn: David Buchbinder, Esq. (David.L.Buchbinder@usdoj.gov) (the "Cure Amount Notice

Parties").  Any such objection must also (i) state the basis for such objection and (ii) state with

specificity what cure amount the party to the Assumed Contract believes is required (in all cases

with appropriate documentation in support thereof).

    24.    Unless a non-Debtor party to any executory contract or unexpired lease, including

an unexpired real property lease, files a Cure Amount Objection by the Cure Amount Objection

Deadline, then the Cure Amount set forth in the Counterparties Cure Notice shall be binding

upon the non-Debtor counterparty to such agreement for all purposes and will constitute a final

determination of the Cure Amount required to be paid in connection with the assumption and

assignment of such agreement.  In addition, all counterparties to the Assumed Contracts who fail to file an objection shall be (i) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Assumed Contract, and the Debtors, the Purchaser or the Successful Bidder, as the case may be, shall be entitled to rely solely upon the Cure Amount set forth in the Counterparties Cure Notice, and (b) be forever barred and estopped from asserting or claiming against the Debtors, the Purchaser or the Successful Bidder, as the case may be, or any other assignee of the Assumed Contract that any additional amounts in excess of the amounts set forth in the Cure Notice, are due or defaults exist, or conditions to assumption and assignment must be satisfied with respect to such Assumed Contract.

25.    The Debtors may resolve any disputed Cure Amount only with the express written consent of the Purchaser or the Successful Bidder, as the case may be.  In the event that the Debtor and the non-Debtor party cannot resolve the Cure Amount, the Debtor shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties, with the express consent of the Purchaser or the Successful Bidder, as applicable.   In the event that a dispute regarding the Cure Amount with respect to an Assumed Contract (such contract, a "Disputed Contract") is determined by an order (the "Disputed Contract Order") of the Bankruptcy Court after closing of the sale, the Purchaser or Successful Bidder, as applicable, shall have the option to designated the Disputed Contract as an Excluded Contract (defined below); provided, however, that if Purchaser does not designate such Disputed Contract as an Excluded Contract (defined below) within thirty (30) days after the date of the Disputed Contract Order, such Disputed Contract shall automatically be deemed to be an Assumed Contract.

26.    The Debtors shall (a) within 48 hours of receipt of a Qualified Bid from a Bidder

(other than the Purchaser) and (b) with respect to the Purchaser, by no later than June 22, 2018

(the later of (a) and (b), the "<u>Adequate Assurance Deadline</u>"), provide the necessary financial

information to demonstrate that the Qualified Bidder or Purchaser, as applicable, can provide

adequate assurance of future performance under Section 365 of the Bankruptcy Code (the

"<u>Adequate Assurance Information</u>") to those counterparties to the Assumed Contracts (or their

counsel) who have (x) submitted a written request (by e-mail to Debtors' counsel is acceptable)

for Adequate Assurance Information and (y) confirmed in writing to the Debtors' counsel (by e-

mail is acceptable) their agreement to keep such Adequate Assurance Information strictly

confidential and use it solely for the purpose of evaluating whether a Qualified Bidder or the

Purchaser has provided adequate assurance of future performance under the applicable Assumed

Contract; <u>provided</u>, <u>however</u>, that the Purchaser or Qualified Bidder, as applicable, may require

the counterparties to the applicable Assumed Contract to execute confidentiality agreements

prior to the remittance of any confidential, non-public information to such counterparty.

27.    Any objection (an "<u>Assumption Objection</u>") to the provision of adequate

assurance of future performance or the assumption and assignment to the Purchaser of an

executory contract and unexpired lease, including, without limitation, an Assumed Contract must

be filed with the Court and served on the Cure Amount Notice Parties **so as to be received on or**

**before July 9, 2018 at 4:00 p.m. (Prevailing Eastern Time)** (the "<u>Assumption Objection</u>

<u>Deadline</u>").  Any such objection must also state the basis therefor.  If a non-Debtor party to any

executory contract or unexpired lease fails to object to the assumption or assignment and

provision of adequate assurance of future performance by the Assumption Objection Deadline or

at the Sale Hearing, as the case may be, such counterparty shall be forever barred from raising

any such objection.  Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before the Sale Hearing or after the Sale Hearing.  Any counterparty to an executory contract or unexpired lease, including, without limitation, an Assumed Contract, that fails to timely file and serve an Assumption Objection shall be forever barred from disputing the assumption and assignment of such Assumed Contract to the Purchaser or to the Successful Bidder or seeking adequate assurance of future performance.

28.    To the extent that a non-Debtor counterparty to an executory contract or unexpired lease, including, without limitation, an Assumed Contract was not provided with a Counterparties Cure Notice (any such contract or lease a "Previously Omitted Contract"), the Debtors will notify the Successful Bidder within three (3) Business Days after the Debtors become aware of the omission.  The Debtors shall serve a notice (the "Previously Omitted Contract Notice") to the counterparties to the Previously Omitted Contract indicating the Debtors' intent to assume and assign the Previously Omitted Contract.  The counterparties will have fourteen (14) days to object to the Cure Amount or the assumption.  If the parties cannot agree on a resolution, the Debtors will seek an expedited hearing before the Court to determine the Cure Amount and approve the assumption.  If there is no objection, then the counterparties will be deemed to have consented to the assumption and assignment and the Cure Amount, and such assumption and assignment and the Cure Amount shall be deemed approved by the Sale Order without further order of this Court.

29.    Notwithstanding anything to the contrary herein, at any time before the Auction, the Purchaser or any Qualified Bidder who becomes the Successful Bidder, as the case may be, shall have the right to exclude any of the Assumed Contracts from the Purchased Assets (an "Excluded Contract"), and any such Excluded Contract shall constitute an Excluded Asset (as

defined in the Asset Purchase Agreement) and shall not constitute, for any purpose whatsoever, a Purchased Asset; provided, however,  that any Excluded Contract nevertheless may be assumed and assigned, at the Successful Bidder's (including Purchaser's) written request to Debtors' counsel made no later than the Closing (as defined in the Asset Purchase Agreement) (the "Subsequently Added Contract") unless alternative mutual arrangements are made between the Debtors and the Successful Bidder (including Purchaser); and provided that any Excluded Contract that does not become a Subsequently Added Contract shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code effective as of the start of the Auction.  Neither the Purchaser nor the Successful Bidder, as applicable, shall incur any liability, obligation, or debt in connection with or related to any such Excluded Contract that constitutes an Excluded Asset.

### Approval of Breakup Fee and Expense Reimbursement

30.     The Breakup Fee in an amount equal to 3% of the Cash Consideration (as defined in the Asset Purchase Agreement)$[        ] and the Expense Reimbursement (as defined in the Asset pPurchase Agreement) for the Purchaser's reasonable and documented out-of-pocket costs and expenses up to a cap of $500,000, and the provisions of the Asset Purchase Agreement relating thereto, are hereby approved.  The Debtors are required to pay the Breakup Fee and Expense Reimbursement to the Purchaser to the extent due and payable under the Asset Purchase Agreement.

31.     The Purchaser shall have the right to credit bid all or any portion of the Breakup Fee and Expense Reimbursement at the Auction.  In no event shall the Debtors provide bid protections (in the form of a breakup fee, expense reimbursement, or otherwise) to any bidder other than the Purchaser.

32.     The Debtors' obligations to pay the Breakup Fee and Expense Reimbursement shall survive termination of the Asset Purchase Agreement and constitute a super-priority

administrative expense claim under sections 503(b) and 507(b) of the Bankruptcy Code that shall

be senior to all other administrative expense claims that may be approved in the Debtors' cases

and shall be secured by a lien on any deposit posted by any bidder with respect to a potential

alternative transaction, which lien shall be senior to any debtor-in-possession financing or other

secured obligations of the Debtors.   The Expense Reimbursement and the Break-Up Fee shall be

paid by wire transfer of immediately available funds promptly (and in any event no later than

two (2) business days) upon the closing of an Alternative Transaction., provided that the Break-

Up Fee and Expense Reimbursement shall not be paid to the Purchaser in the event that the Asset

Purchase Agreement is terminated due to the Purchaser's breach of the agreement, including by

its failure to close the Sale.

## Related Relief

33.     The dates set forth on the attached Schedule A are hereby approved.

34.     Any obligations of the Debtors set forth in the Asset Purchase Agreement that are

intended to be performed prior to the Sale Hearing and entry of the Sale Order are authorized as

set forth herein.

35.     The Debtors are hereby authorized and empowered to take such actions as may be

reasonably necessary to implement and effect the terms and requirements established this Order.

36.     This Order shall constitute findings of fact and conclusions of law and shall take

effect immediately upon execution hereof.

37.     This Order shall be binding on the Debtors, including any chapter 7 or chapter 11

trustee or other fiduciary appointed for the estates of the Debtors.

38.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d),

7052, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective

and enforceable upon its entry and any waiting or stay period is expressly waived.

39.     Notwithstanding anything to the contrary in the Asset Purchase Agreement, this Court shall retain sole, exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Asset Purchase Agreement, the Bidding Procedures and the implementation of this Order.

Dated:  Wilmington, Delaware
        _____,2018

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

Schedule A

| Deadline for Debtors to Serve Notice of Sale Hearing and Notice of Entry of Bid Procedures Order | June 8, 2018 |
|---|---|
| Deadline for Debtors to Serve Notice of Sale Cure Notices | June 8, 2018 |
| Bid Deadline | July ~~2~~11, 2018 |
| Deadline to Object to Cure Amounts | July 2, 2018 |
| Deadline to Object to Assumption and Assignment of Contracts and Leases to Stalking Horse Bidder | July 2, 2018 |
| Sale Objection Deadline | July 2, 2018 |
| Deadline to Object to Adequate Assurance of Successful Bidder other than Stalking Horse | July ~~2~~13, 2018 |
| Auction | July ~~9~~13, 2018 |
| Deadline of Debtors to File and Serve Notice of Winning Bidder and Amount of Bid | July ~~10~~16, 2018 |
| Sale Hearing | July 17, 2018 |

**EXHIBIT 1**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x
                  :    Chapter 11

In re:                      :

                      :    Case No. 18-11120 (BLS)

VIDEOLOGY, INC., *et al.*,[1]    :

                      :    (Jointly Administered)

              Debtors.    :

                      :    **Related to Docket No. ____**
---------------------------------------------------------- x

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed in connection with the sale of all or substantially all the assets of Videology, Inc. and its debtor affiliates (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

On June ___, 2018 the Bankruptcy Court entered that certain Order (A) Approving "Stalking Horse" Asset Purchase Agreement; (B) Approving Procedures in Connection With the Sale of All or Substantially All of the Debtors' Assets; (C) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving the Form and Manner of Notice Thereof; (F) Approving Breakup Fee and Expense Reimbursement; and (G) Granting Related Relief  (the "**Bidding Procedures Order**").  Pursuant to the Bidding Procedures Order, the Debtors are authorized to employ, and are empowered to take all actions necessary or appropriate to implement the Bidding Procedures in connection with the sale of the Purchased Assets (as defined below) (the "**Sale**").

## I.    PURCHASE AGREEMENT

The Debtors, as sellers, entered into that certain Asset Purchase Agreement, dated May 4, 2018 (together with the schedules and related documents thereto, the "**Purchase Agreement**") with Amobee, Inc. as purchaser (the "**Purchaser**"), pursuant to which the Purchaser has agreed to acquire the Purchased Assets (as defined and to the extent provided in the Purchase Agreement, collectively, the "**Purchased Assets**") and to assume certain expressly enumerated liabilities, all on the terms and conditions specified therein.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Videology, Inc. (2191), Collider Media, Inc. (8602), Videology Media Technologies, LLC (6243),  LucidMedia Networks, Inc. (8566), and Videology, Ltd., a company organized under the laws of England and Wales.  The address of the Debtors' corporate headquarters is 1500 Whetstone Way, Suite 500, Baltimore, MD 21230.

The sale transaction pursuant to the Purchase Agreement is subject to competitive bidding as set forth herein. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.

## II.      SALE FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS

Except as otherwise provided in the Purchase Agreement or such other approved purchase agreement of the Successful Bidder, the Debtors shall seek to have the Purchased Assets sold free and clear of any claim (including, without limitation, free and clear of any claim of successor liability or any claim that the Purchaser is a mere continuation of, or has merged with the Debtors), lien, encumbrance, pledge, mortgage, deed of trust, deemed trust, security interest, lease, charge, option, right of first refusal, easement, restriction, conditional sale or other title retention agreement, financing lease, right of first refusal, option, servitude, right of way, proxy, voting trust or agreement, transfer restriction or any encumbrance similar to any of the foregoing of any kind or nature thereon and there against (collectively, the "**Encumbrances**"), with such Encumbrances to attach solely to the net proceeds of Sale.

## III.      PROVISIONS GOVERNING QUALIFICATIONS OF BIDDERS

### A.      Potential Bidders

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person, other than the Purchaser, who wishes to participate in the bidding process (a "**Potential Bidder**") must deliver to the Notice Parties (as defined below) to the extent not previously delivered, an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors to a Potential Bidder) in form and substance satisfactory to the Debtors which shall inure to the benefit of the Successful Bidder; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

### B.      Due Diligence

Upon execution of a valid confidentiality agreement in form and substance reasonably acceptable to the Debtors, the Debtors will afford any Potential Bidder such due diligence access or additional information as the Debtors, in consultation with their advisors, deem appropriate, in their reasonable discretion. The Debtors will limit access to due diligence to those parties they believe, in the exercise of their reasonable judgment, are pursuing the transaction in good faith and are capable of submitting a Qualified Bid (as defined below).

The Debtors must promptly advise the Purchaser in the event any other Potential Bidder receives diligence the Purchaser has not received and Purchaser shall be provided with prompt access to such diligence materials.

The due diligence period shall end on the Bid Deadline and no Potential Bid shall be deemed a Qualified Bid if it has any due diligence contingencies as of the Bid Deadline. For the avoidance of doubt, neither the Debtors nor any of their respective representatives shall be obligated to furnish any due diligence information to any person other than a Potential Bidder.

C.    **Qualified Bids**

In order to participate in the bidding process and be deemed a "**Qualified Bidder**," each Potential Bidder (other than the Purchaser) must submit a "**Qualified Bid**" by the Bid Deadline (as defined below).  To constitute a Qualified Bid, a bid must:

 i.     fully disclose the identity of the Potential Bidder and include contact information for the specific person (s) the Debtors should contact if they have any questions about the Potential Bidder's bid;

 ii.    state that the Potential Bidder offers to purchase the Purchased Assets or some substantial portion thereof;

 iii.   include a signed writing that the Potential Bidder's offer is formal, binding, unconditional, and irrevocable until (i) the closing of the transaction with the Successful Bidder (as defined below) and (ii) for two (2) business days after the earlier of the closing of the sale transaction with the Successful Bidder or the termination of the Successful Bid, if such bidder is designated the Back-Up Bidder (as defined below) at the conclusion of the Auction;

 iv.    confirm that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

 v.     set forth each regulatory and third-party approval required for the Potential Bidder to consummate the transaction and the time period within which the Potential Bidder expects to receive such approvals;

 vi.    include a duly authorized and executed copy of a purchase agreement (a "**Bidder Purchase Agreement**"), including the purchase price for the Purchased Assets expressed in U.S. Dollars (the "**Purchase Price**"), together with all exhibits and schedules thereto, together with copies marked ("**Marked Agreement**") to show any amendments and modifications to the Purchase Agreement and the proposed order to approve the sale; provided, however, that such Bidder Purchase Agreement shall not include any financing or diligence conditions;

 vii.   include written evidence of sufficient cash on hand to fund the purchase price or sources of immediately available funds that are not conditioned or contingent on further third party approvals or commitments, that will allow the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transaction contemplated by the Bidder Purchase Agreement; such written evidence shall include the most current audited and the most current unaudited financial statements, and any bank account or investment account statements or other evidence of any bank line(s) of credit or available cash

3

to complete the purchase, or such other financial information as may be acceptable to the Debtors in their reasonable discretion (collectively, the "**Financials**") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Potential Bidder's equity holder(s) or other financial backer(s);

viii.  provide for a cash purchase price of at least the Purchase Price (as defined in the Purchase Agreement) *plus* a cash overbid of $1,950,000[          ]² (collectively, the "**Minimum Overbid**"), and otherwise has a value to the Debtors, in the Debtors' exercise of their reasonable business judgment that is greater or otherwise better than the value offered under the Purchase Agreement, including impact of the liabilities assumed in the Purchase Agreement;

ix.  identify with particularity which executory contracts and unexpired leases the Potential Bidder wishes to assume and provides for the Potential Bidder to pay related Cure Amount;

x.  contain sufficient information concerning the Potential Bidder's ability to provide adequate assurance of future performance with respect to executory contracts and unexpired leases to be assumed and assigned;

xi.  include an acknowledgement and representation that the bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely on its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (C) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

xii.  include evidence, in form and substance reasonably satisfactory to the Debtors of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement;

xiii.  be accompanied by a good faith deposit in the form of a wire transfer, certified check or such other form acceptable to the Debtors payable to the order of the Debtors (or such other party as the Debtors may determine,

---

² This overbid is equal to the Bid Protections (as defined in the Purchase Agreement) plus $100,000.

including an escrow agent) in an amount equal to ten percent (10%) of the Qualified Bid;

xiv.       state that the Potential Bidder agrees to serve as a Back-Up Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bidder (as defined below) with respect to the Purchased Assets;

xv.       state that the Potential Bidder consents to the jurisdiction of the Bankruptcy Court; and

xvi.       contain such other information reasonably requested by the Debtors.

As promptly as practicable after a Potential Bidder delivers all the materials required above (and in any event no later than two (2) business days thereafter), the Debtors, in consultation with the official committee of unsecured creditors (the "**Committee**"), will determine and will notify the Potential Bidder and the Notice Parties if such Potential Bidder is a Qualified Bidder.

For the avoidance of doubt, the Purchaser is deemed to be a Qualified Bidder and shall not be required to take any further action in order to participate in the Auction (if any) or, if the Purchaser is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing (as defined below).

The Debtors, in their discretion, and in consultation with the Committee, may accept a single Qualified Bid or multiple bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid.

A party may participate in the bidding process by submitting a Bid for all of the Purchased Assets or for smaller subsets of the Purchased Assets.

### D.    **Bid Deadline**

A Potential Bidder that desires to make a bid shall deliver written copies of its bid to the following parties (collectively, the "**Bidding Notice Parties**"): (i) the Debtors, 1500 Whetstone Way, Suite 500, Baltimore, MD 21230, Attn: Kenneth Tarpey (ktarpey@videologygroup.com); (ii) Counsel to the Debtors, Cole Schotz P.C., 300 E. Lombard Street, Suite 1450, Baltimore, MD 21202, Attn: Irving Walker, Esq., (iwalker@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn: Patrick J. Reilley, Esq., (preilley@coleschotz.com); and (iii) financial advisor to the Debtors, Berkeley Research Group, LLC, 2049 Century Park East, Suite 2525, Century City, CA 90067, Attn: Bob Duffy, (bduffy@thinkbrg.com) bduffy@thinkbrg.com); and (iv) proposed counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, 46th Floor, New York, NY 10036, Attn: Seth Van Aalten, Esq. (svanaalten@cooley.com) and Michael Klein, Esq. (mklein@cooley.com), so as to be received not later than  July 211, 2018 at 5:00 p.m. Eastern Standard Time (the "**Bid Deadline**"), or such later date as may be agreed to by the Debtors.  The Bid Deadline may be extended by the Debtors in consultation with their advisors and the Committee.  The Purchaser is deemed a Qualified Bidder and the Purchase Agreement constitutes a Qualified Bid for all purposes.

IV.    **Auction Process**

    A.    **Evaluation of Competing Bids**

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) any proposed revisions to the Purchase Agreement, and (4) any other factors deemed relevant by the Debtors in their reasonable discretion and in consultation with the Committee.

    B.    **No Qualified Bids**

If the Debtors do not receive any Qualified Bids other than the Purchase Agreement, the Debtors will not hold an auction, the Purchaser will be named the Successful Bidder for the Purchased Assets and the Debtors shall request at the Sale Hearing (as defined below) that the Bankruptcy Court approve the Purchase Agreement with the Purchaser.

    C.    **Auction**

If the Debtors receive one or more Qualified Bids in addition to the Purchase Agreement, the Debtors will conduct an auction (the "**Auction**"), which shall be transcribed, on **July 9̶13, 2018 at 10:00 a.m.** Eastern Standard Time (the "**Auction Date**"), as same may be adjourned by the Debtors in consultation with their advisors and the Committee, at the offices of Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  The Auction shall run in accordance with the following procedures:

        i.    A copy of the Qualified Bids shall be delivered to the Purchaser and to the other Qualified Bidders no later than one (1) Business Day before the Auction;

        ii.    only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate at the Auction;

        iii.    Qualified Bidders participating the Auction must appear in person at the Auction, or through a duly authorized representative;

        iv.    the Auction will be conducted openly and all creditors will be permitted to attend  if they provide the Debtors written notice of their intention to attend the Auction on or before two business days prior to the Auction. Such written notice must be sent to proposed counsel for the Debtors via electronic mail to Irv Walker, Esq. at iwalker@coleschotz.com  and Patrick Reilley, Esq. at preilley@coleschotz.compreilley@coleschotz.com, with copies to counsel for the Committee to Seth Van Aalten, Esq. at svanaalten@cooley.com and Michael Klein, Esq. at mklein@cooley.com; provided, however, the

Debtors may, in their sole and exclusive discretion and in consultation with the Committee, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on the behalf of or accompany each Qualified Bidder and other parties in interest at the Auction;

v.     each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

vi.    at least one (1) business day before the Auction, each Qualified Bidder must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder (defined below) at the conclusion of the Auction.  At least one (1) business day before the Auction, the Debtors will identify to the Purchaser which Qualified Bid the Debtors believe in their reasonable discretion, in consultation with their advisors and the Committee, is the highest or otherwise best offer at that time; provided, however, that the Debtors, upon further consultation, may determine which offer is the highest or otherwise best offer at any time before the commencement of the Auction and all advise the Purchaser of any change (the "**Starting Bid**");

vii.   all Qualified Bidders will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

viii.  the Debtors, in consultation with their advisors and the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Order approving these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction; and

ix.    bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "**Subsequent Bid**") providing a net value to the estate of at least an additional $100,000 above the prior bid.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall, in consultation with the Committee, announce the bid that they believe to be the highest or otherwise better offer (the "**Leading Bid**").  A round of bidding will conclude after each participating Qualified

Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

x.    The Purchaser shall have the right to credit bid all or apportion of the Breakup Fee and Expense Reimbursement at any Auction.

The Debtors shall have the right to conduct any number of Auctions on such date to accommodate Qualified Bids for certain, but less than all of the Purchased Assets if the Debtors determine, in their business judgment and in consultation with the Committee, that such process would be in the best interest of the Debtors' estates and result in a materially higher recovery for the estates.

### D.    Selection of Successful Bid

Before the conclusion of the Auction, the Debtors, in consultation with the Committee, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders submitted at the Auction (the "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"), and communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid.  The determination of the Successful Bid by the Debtors at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

Unless otherwise agreed to by the Debtors and the Successful Bidder, within two (2) business days after the conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.  The Debtors shall file notice of the identity of the successful bidder and back-up bidder at the Auction, and the amount of their bids, with the Court by July 1016, 2018.  The same day, the Debtors shall serve such notice by fax or email to all contract counterparties and creditors who have requested the same in writing and provided their fax number or email address to Debtors' counsel.

The Debtors will consummate the Sale to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing.

### E.    Back-Up Bidder

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid to the Successful Bidder, as determined by the Debtors at the Auction in the exercise of their business judgment and in consultation with the Committee, shall be required to serve as a back-up bidder (the "**Back-Up Bidder**" and, the bid submitted by the Back-Up Bidder, the "**Back-Up Bid**") and keep such bid open and irrevocable until either two (2) business days after closing of the sale transaction with the Successful Bidder or five (5) business days after termination of a Successful Bid, whichever applies.  Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the Sale

with the Back-Up Bidder without further order of the Bankruptcy Court.  For the avoidance of doubt, absent its participation in the Auction and the making of an overbid, the Purchaser cannot be designated the Back-Up Bidder, unless it consents to such designation.

### F.      Return of Deposits

All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.  The deposit of the Back-Up Bidder shall be held by the Debtors until one (1) business day after the closing of the sale transaction with the Successful Bidder.

### V.      Sale Hearing

The Successful Bid (or the Purchase Agreement, if no qualified Bid other than that of the Purchaser is received or accepted) and Back-Up Bid will be subject to approval by the Bankruptcy Court.  The hearing to approve the Sale and the Successful Bid and any Back-Up Bid shall take place on July 17, 2018 Eastern Standard Time, before the Honorable Brendan L. Shannon, U.S.B.J., at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 6th Floor, Courtroom 6, Wilmington, DE  19801.  The Debtors' presentation to the Bankruptcy Court for approval of the Successful Bid or any Back-Up Bid does not constitute the Debtors' acceptance of such bid(s).

The Debtors will have accepted the terms of the Successful Bid or any Back-Up Bid only when such bid(s) has been approved by the Bankruptcy Court pursuant to a Sale Order.