**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VIDEOLOGY, INC., *et al.*, | ) | Case No. 18-11120 (BLS) |
| | ) | |
| Debtors. | ) | |
| | ) | **Ref. Docket Nos. 39, 183 & 265** |

**OBJECTION OF TEADS FRANCE SAS TO SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS AND TO PROPOSED CURE AMOUNT**

Teads France SAS, as successor in interest to Teads Technology SAS, ("Teads"), by and through its undersigned counsel, hereby files its objection to the *Debtors' Motion for Orders (I) (A) Approving Bidding Procedures for Sale of Substantially All the Debtors' Assets, (B) Approving Stalking Horse Agreement and Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief; and (II)(A) Approving Sale of Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts, and (C) Granting Related Relief* [Docket No. 39] (the "Sale Motion") and to the *Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned* [Docket No. 183] (the "Original Assumption Notice"), as amended by the *Amended Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned* [Docket No. 265] (the "Amended Assumption Notice") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Teads is a creditor of both a Debtor and Non-Debtor Subsidiaries, including VMT B.V. and VMT PTE (defined below). By the Sale Motion, the Debtors seek Court authority to sell a fully integrated business, encompassing the business and assets of Non-Debtor Subsidiaries. While a sale of substantially all of the Debtors' assets may not, in itself, be unwarranted, this Court should reject the sale as currently proposed because it does not allocate sale proceeds to Non-Debtor Subsidiaries (or their creditors) nor protect these parties' interests. The proposed sale should also be rejected because it would approve the sale of assets belonging solely to Non-Debtor Subsidiaries, which are not property of the Debtors' estates.

2. Teads further requests that the Court deny the Sale Motion so that the interests of Non-Debtor Subsidiary VMT B.V. may be protected. As a creditor of VMT B.V., Teads intends at this time to seek the appointment of a bankruptcy trustee under Dutch law for VMT B.V. Once a trustee is appointed for VMT B.V., he or she can act in the interests of VMT B.V. and its stakeholders (like Teads) in connection with any proposed Debtor transaction – and can determine whether VMT B.V. has fraudulent transfer claims or other remedies against the Debtors. The prejudicial treatment of VMT B.V. and other Non-Debtor Subsidiaries in the proposed APA indicates that the Debtors' management has not properly defended these interests, nor investigated potential claims against the Debtors, and is unlikely to do so.

3. Should the Court nevertheless determine to provide relief via the Sale Motion, Teads requests that the Court require modification of the APA to make clear that *no* assets are being sold free or clear of any rights of the Non-Debtor Subsidiaries or their creditors to pursue remedies and recovery from transferred assets post-sale and from the Purchaser under non-bankruptcy law or equity. The Court should require this change because the "free and clear"

protections of 11 U.S.C. § 363, and all other protections that this Court might afford, are not available to a transfer of Non-Debtor Subsidiaries' property nor against the Non-Debtor Subsidiaries' interests. Even if the Court determines that a sale of jointly-owned assets of the Debtors and Non-Debtor Subsidiaries can be approved, the Debtors should be required to allocate a portion of the purchase price attributable to the assets of the Non-Debtor Subsidiaries being sold, and, by extension, to the creditors of those entities, such as Teads.

4. Further, if the Court elects to grant the Sale Motion to any extent, Teads requests that the Court fix the cure amount owed to Teads, in the event that the interests of Debtor VMT (defined below) in the Teads Agreement (defined below) are assumed and/or assigned, at $1,113,485.93.

## BACKGROUND

**A.    The Teads Agreement and Amount Due.**

5. As of November 9, 2014, Debtor Videology Media Technologies, LLC ("VMT"), Videology Media Technologies B.V. ("VMT B.V.") and Videology Media Technologies PTE LTD ("VMT PTE" and, together with VMT and VMT B.V., the "VMT Entities") and Teads entered into that certain Global Master Services Agreement pursuant to which Teads provided digital advertising services to the Debtors (the "Teads Agreement"). VMT B.V. is a Dutch private limited liability company and is a subsidiary of Debtor Videology, Inc. through non-debtor VDGY Holding, B.V. VMT PTE is a private company organized under the laws of Singapore and is a subsidiary of Debtor Videology Ltd., through non-debtor Videology Asia PTE LTD.

6. As of May 10, 2018 (the "Petition Date"), the VMT Entities were in default of their obligations under the Teads Agreement and owed an outstanding balance to Teads of

$1,113,485.93 (the "Amount Due").  The Amount Due is evidenced by the invoices (the "Invoices") attached hereto as **Exhibit A**.

**B.      Approval of the Proposed Sale Would Result in the Sale of Non-Debtor Assets.**

7.      On the Petition Date, the Debtors filed voluntary petitions under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors elected not to include certain of their subsidiaries (the "Non-Debtor Subsidiaries"), including VMT B.V. and VMT PTE, in these jointly administered bankruptcy cases.

8.      On the Petition Date, the Debtors filed the Sale Motion seeking this Court's approval of the sale of substantially all of their assets pursuant to that certain Asset Purchase Agreement attached to the Sale Motion as Exhibit C (the "APA").  However, beyond providing for the sale of the Debtors' assets, the APA mandates the sale of assets of the Non-Debtor Subsidiaries, irrespective of whether those entities are subject to the jurisdiction of this Court or of the effect that the transaction would have on the ability of the Non-Debtor Subsidiaries to pay their own debts.

9.      The APA defines "Group Companies" to include each of the Debtors *as well as each of the Non-Debtor Subsidiaries*, including VMT B.V. and VMT PTE.  *See* APA, Annex C.  The APA further defines the term "Business" to include, in relevant part, "the operation of the business of providing services and technology for the planning, managing, measuring, optimizing and execution of digital video and TV advertising as currently provided *by the Group Companies*."  APA, Annex B at 3 (emphasis added).  Following the definitions of "Group Companies" and "Business" even further to the "Purchased Assets" being sold (as set forth in Section 2 of the APA) leads to the inescapable conclusion that the Debtors seek to sell the assets of the Non-Debtor Subsidiaries.  For example, the APA provides for the sale of the following:

- All "Furniture and Equipment", which includes "all equipment machinery, fixtures, vehicles, spare parts, furniture and other tangible property owned or leased *by the Group Companies*, to the extent designated or intended to be used *in the operation of the Business* . . ." APA § 2.1(c), Annex B at 3 (emphasis added).

- "[A]ll Documents", which includes "all files, documents, electronically stored information . . . and other similar materials *related to the Business* . . ." APA § 2.1(f), Annex B at 2 (emphasis added).

- "[A]ll Necessary Permits . . . *used in the Business* . . ." APA § 2.1(g) (emphasis added).

- "[A]ll goodwill and other intangible assets associated *with the Business*." APA § 2.1(i) (emphasis added).

10.  The APA also permits the Purchaser to "designate any Contract of the Sellers *or any other Group Company* as a Purchased Contract". APA § 2.6 (emphasis added).

11.  Required deliveries by the Debtors under the APA include Local Asset Purchase Agreements for certain of the Non-Debtor Subsidiaries located in Canada, Australia, and Japan. *See* APA § 4.2(d). Conspicuously absent from the required Local Asset Purchase Agreements are those for entities located in Singapore (VMT PTE) and the Netherlands (VMT B.V.), despite those entities being included in the definition of Group Companies.

12.  As further evidence that the Debtors purport to sell the Business of the Non-Debtor Subsidiaries, the APA requires the Debtors to make numerous representations about the operations of the Group Companies as whole, including, for example, that the business of each of the Group Companies has been operated in accordance with applicable law. *See generally* APA Art. V.

13. The APA provides for a limitation of successor liability against the Purchaser as it relates to the business of *any Group Company*. *See* APA § 2.5. Specifically, the APA provides that the "Purchaser shall not, and shall not be deemed to . . . be liable for any acts or omissions of any Group Company in the conduct of the Business or arising under or related to the Purchased Assets." *Id.* The Debtors and the Purchaser agree that substantially the same language must be contained in the Sale Order. *See id.*

14. Precluding any post-sale remedies against the Non-Debtor Subsidiaries exceeds this Court's jurisdiction over *only* Debtor assets and business and should not be allowed. Moreover, the APA does not even grant the Non-Debtor Subsidiaries any sale proceeds. In lieu of allocating consideration to the Non-Debtor Subsidiaries whose assets are also being sold, the APA limits "the allocation of the Purchase Price *among* [only] *the Seller Companies* . . . based on the fair value of the Purchased Assets . . ." APA § 3.1(c) (emphasis added).

15. Via the APA, the Debtors and the Purchaser would sell the assets of Non-Debtor Subsidiaries, yet utterly deny any proceeds or other consideration to those very entities (or their creditors).

**C.     The Proposed Cure Amount Does Not Reflect the Full Amount Due.**

16. On June 8, 2018, the Debtors filed their Original Assumption Notice. The Teads Agreement was listed with a proposed cure amount of $0.00.

17. On June 13, 2018, the Debtors filed their Schedules of Assets and Liabilities [Docket Nos. 196, 200 and 204] (the "<u>Schedules</u>"), which listed Teads as an unsecured creditor holding claims totaling $812,891.75 against certain of the Debtors, including (1) VMT in the amount of $22,909.65, *see* Docket No. 200 at 30 & 46; (2) Videology Ltd. in the amount of

$368,205.35, *see* Docket No. 204 at 54; and (3) Videology Inc. in the amount of $421,783.76, *see* Docket No. 196 at 113.[1]

18.     Teads informed the Debtors that the Schedules reflected a certain amount owed by the Debtors to Teads.  The Original Assumption Notice was, therefore, inconsistent with the Schedules.  In response, on June 28, 2018, the Debtors filed the Amended Assumption Notice, now listing the proposed cure amount under the Teads Agreement as $812,811.41 (the "Proposed Cure Amount").[2]  Teads understands that the Debtors assert that the remaining Amount Due to Teads under the Teads Agreement is owed by Non-Debtor Subsidiaries and is not part of the required cure costs under the APA.  However, under the Teads Agreement, each of the VMT Entities is jointly and severally liable to Teads for the full Amount Due, so Debtor VMT is liable for the entire Amount Due as a cure cost and otherwise.

19.     The Debtors admit that they operate a fully integrated enterprise with the Non-Debtor Subsidiaries.[3]  Thus, this joint and several liability to Teads is appropriate.  In fact, Videology Inc. and Videology Ltd. are not direct counterparties with Teads under the Teads Agreement, and yet the Debtors admit that the accounting records of both Videology Ltd. and Videology Inc. reflect that those entities owe substantial amounts to Teads.  *See* Videology Ltd. Schedule, Docket No. 204 at 54 (reflecting $368,205.35 owed to Teads); Videology Inc. Schedule, Docket No. 196 at 113 (reflecting $421,783.76 owed to Teads).

---

[1] The Debtors filed amended Schedules for Videology Inc. and Videology Ltd. on June 28, 2018.  *See* Docket Nos. 261 & 262.  The amounts owed to Teads is the same on the amended Schedules.

[2] The Proposed Cure Amount still inexplicably differs by $80.34 from the amount listed as due to Teads in the Schedules.

[3] As just one example, the flow of funds chart filed in support of the Debtors' motion to maintain its existing cash management system [Docket No. 11] at Exhibit A shows the complete integration of the Debtors' and Non-Debtor Subsidiaries' business.

**D.     The Debtors Have Precluded VMT B.V. From Paying Its Debt to Teads.**

20.     On June 1, 2018, Teads demanded payment of a portion of the Amount Due from VMT B.V.  VMT B.V. acknowledged its debt to Teads but stated that it was not allowed nor able to pay Teads as a result of the Debtors' Chapter 11 cases.

21.     In short, the Debtors will not allow VMT B.V. to pay its creditors.  The injustice is glaring: on the one hand, the Debtors disclaim responsibility for the entire Amount Due as a cure, on the theory that only a Non-Debtor Subsidiary owes the omitted portion.  On the other hand, the Debtors seek to sell the assets of the Non-Debtor Subsidiaries, including VMT B.V. and VMT PTE, without providing those subsidiaries (or their stakeholders, such as Teads) any sale proceeds. *See* APA § 3.1(c) (allocating the purchase price among only the Seller Companies and excluding the Non-Debtor Subsidiaries).

22.     As a result of the Debtors' impropriety, Teads intends to institute an involuntary bankruptcy proceeding under Dutch law against VMT B.V.  Teads sees no other avenue to protect its rights as a creditor of VMT B.V.  Teads expects that a trustee will be appointed for VMT B.V. in the coming weeks and that such trustee will seek to investigate, among other things, whether there are fraudulent transfer claims that should be asserted against the Debtors, including in connection with the entry into the APA, if it were approved.  Given that the APA seeks to sell assets owned jointly by VMT B.V. and the Debtors as well as assets owned solely by VMT B.V., Teads also expects that a VMT B.V. trustee would object to the Sale Motion.

## **OBJECTION**

23.     In principal, Teads is not opposed to a sale of substantially all of the Debtors' assets and to the assumption and assignment of the Teads Agreement, provided that the full Amount Due is paid to Teads rather than the Proposed Cure Amount.  However, because the

Debtors have refused to acknowledge the full Amount Due and are taking action via the APA to preclude Teads from otherwise collecting the full Amount Due from Non-Debtor Subsidiaries, including VMT B.V., Teads has no choice but to object to the Sale Motion and to the Proposed Cure Amount. The Court should deny the Sale Motion based on the improper APA terms. Even if the Sale Motion is approved, the Court should set the cure amount relating to the Teads Agreement at the full Amount Due.

I. **THE COURT SHOULD DENY THE SALE MOTION AND APPROVAL OF THE APA AS CURRENTLY PROPOSED.**

    A. **The Debtors Cannot Sell Property Owned Solely By the Non-Debtor Subsidiaries.**

24. The Debtors cannot sell assets beyond property of the estates. Section 363(b) of the Bankruptcy Code permits a sale, other than in the ordinary course of business, only of "property of the estate". 11 U.S.C. § 363(b). "[T]he estate [must] actually have an interest in the property to be sold. For that reason, a bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owns the property." *Hey v. Silver Beach LLC (In re Silver Beach LLC)*, No. NV-09-1049, 2009 Bankr. LEXIS 4587, at *15 (B.A.P. 9th Cir. Nov. 3, 2009). In addition, "[a] section 363(f) sale cannot be used to transform property of others into property of the estate." *Id.* at *18.

25. Here, the Debtors' APA would illegally cause the sale of property owned solely by the Non-Debtor Subsidiaries, which is not the estates' property. For example, the APA provides that purchased assets would include "Furniture and Equipment" of the Group Companies. APA § 2.1(c), Annex B at 3. "[A]ll Documents" that are "related to the Business" would also be sold. APA § 2.1(f), Annex B at 2 (emphasis added). In addition, "all Necessary Permits . . . used in the Business . . ." would be transferred. APA § 2.1(g) (emphasis added).

The APA would also permit the Purchaser to acquire any contract owned by the Debtors "or any other Group Company", which would include contracts solely of the Non-Debtor Subsidiaries. APA § 2.6. As demonstrated by the very terms of the APA, this Court should deny the Sale Motion because approval would result in the sale of property owned solely by the Non-Debtor Subsidiaries. Even if a sale of the Non-Debtor Subsidiaries' assets were approved, this Court should require a portion of the purchase price to be allocated to the Non-Debtor Subsidiaries for the benefit of the creditors of those entities, including Teads.

> **B.   The Debtors Cannot Sell Their Assets "Free and Clear" of the Non-Debtor Subsidiaries' Interests.**

26.   The sale cannot be approved free and clear of the Non-Debtor Subsidiaries' interests in the Business, as that term is defined in the APA. Section 363(f) of the Bankruptcy Code permits a "free and clear" sale of the interests of an entity other than the estate, only if, in relevant part:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents; . . .
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27.   Here, none of the requirements for a free and clear sale are met. *First*, Teads knows of no applicable nonbankruptcy law that would permit an entity to sell the interests of another entity – *especially* for absolutely no consideration and without a lien attaching to the proceeds. So, section 363(f)(1) cannot apply. *Second*, the Debtors are not acting for the benefit of VMT B.V., or any of the Non-Debtor Subsidiaries for that matter, in the sale that would

provide them with no consideration, so those entities are incapable of granting their consent to the sale. A free and clear sale pursuant to section 363(f)(2) is not warranted. *Third*, given the terms of the APA, the Debtors have admitted that no dispute exists regarding whether the Non-Debtor Subsidiaries have an ownership right in the assets being sold, whether solely by the Non-Debtor Subsidiaries or jointly between the Non-Debtor Subsidiaries and the Debtors. *See, e.g.*, APA, Annex B at 3 (defining the "Business" that is being sold to be the business of the Group Companies, which includes the Non-Debtor Subsidiaries).[4] Section 363(f)(4) does not apply. *Fourth*, even if the Non-Debtor Subsidiaries could be compelled to accept a money satisfaction for their interest, the APA specifically anticipates that the Non-Debtor Subsidiaries will receive no portion of the purchase price when it is allocated. *See* APA § 3.1(c) (providing for a purchase price allocation among the Seller Companies, which includes the Debtors but not the Non-Debtor Subsidiaries). A free and clear sale pursuant to section 363(f)(5) is similarly not warranted.

28.     It is also quite possible that some of the assets proposed to be sold are owned by the Debtors and Non-Debtor Subsidiaries as tenants in common or joint tenants, in which case the provisions for the sale of a co-owner's property set forth in section 363(h) of the Bankruptcy Code might be available. *See* 11 U.S.C. § 363(h) (permitting the sale of a co-owner's interest in estate property only if four requirements are met). But the Debtors have not met section 363(h)'s requirements *via* an adversary proceeding. *See* Fed. R. Bankr. P. 7001(3) (requiring an adversary proceeding if a non-consenting co-owner's interests in property of the estate are to be sold).

---

[4] And, even if the Debtors changed their story now to argue there were a dispute, this Court should ignore such a self-serving assertion, especially when the Non-Debtor Subsidiaries apparently have no independent management to contest such a new argument.

29. Therefore, the APA cannot be approved, nor the assets sold free and clear of the Non-Debtor Subsidiaries' interests. At minimum, the Debtors should be required to allocate a portion of the purchase price attributable to the assets of the Non-Debtor Subsidiaries being sold, and, by extension, to the creditors of those entities, such as Teads.

### B. Approval of the Sale Should Be Delayed Pending the Appointment of a Trustee for VMT B.V.

30. Clearly, the fox is running the henhouse at the Non-Debtor Subsidiaries. Therefore, it appears that an independent evaluator is necessary here to adequately defend these entities (and their stakeholders, including Teads) and to ensure that their rights are not curtailed by any order entered by this Court. Teads currently intends to take steps to ensure that a trustee is appointed for VMT B.V. and requests that this Court deny the Sale Motion, or at least delay its consideration until after such trustee is appointed.

31. Among other things, a trustee needs to be appointed for VMT B.V. to evaluate whether there are fraudulent transfer claims that should be asserted against the Debtors. For example, approval of the APA itself appears to result in a *prima facie* fraudulent transfer claim under Dutch law on behalf of VMT B.V. against the Debtors and/or the Purchaser. Specifically, because the parties do not intend to apportion any of the purchase price for the Business to VMT B.V., its assets are being sold without consideration and with the knowledge that VMT B.V. will be unable to pay its creditors. For this reason alone, approval of the sale should be delayed. It is also quite possible, *especially* given the Debtors' cash management system, that VMT B.V. would have a basis for other fraudulent transfer claims against the Debtors, both pre- and post-petition. An independent trustee of VMT B.V. could properly evaluate these transfers; as it stands, no one is.

32.     Therefore, the approval of the APA should be denied *at least* until a trustee is appointed for VMT B.V. to protect rights vis-à-vis the Debtors and the assets that the Debtors seek to sell.  If the Court determines that approval of the Sale Motion is nevertheless warranted at this time, the order approving the Sale Motion should make clear that no rights of the Non-Debtor Subsidiaries or their creditors in or to any assets, or against the Purchaser, are affected, as existing under non-bankruptcy law or in equity, and that a portion of the proceeds must be allocated to the Non-Debtor Subsidiaries.

## II.     THE COURT SHOULD FIX THE CURE AMOUNT UNDER THE TEADS AGREEMENT AT THE FULL AMOUNT DUE.

33.     If the Court nevertheless determines to grant the Sale Motion, Teads is not opposed to the assumption and assignment of the Teads Agreement.  However, to assume and assign the Teads Agreement, the Debtors are required to pay the full Amount Due.  Section 365(a) of the Bankruptcy Code allows a debtor to assume an executory contract subject to court approval.  *See* 11 U.S.C. § 365(a).  However, as a condition for assumption, the debtor is required to cure all defaults existing under the contract. 11 U.S.C. § 365(b)(1)(A); *In re Zenith Indus. Corp.*, 319 B.R. 810, 815 (Bankr. D. Del. 2005) ("In order for a debtor to assume and assign an executory contract under § 365, a debtor is required to cure all defaults (including pre-petition defaults).").

34.     The Invoices demonstrate that, as of the Petition Date, Teads was owed $1,113,485.93 under the Teads Agreement.  Since the the VMT Entities, including Debtor VMT, are each liable for all of the Amount Due under the Teads Agreement, the Court should fix the cure amount at the full Amount Due.

## RESERVATION OF RIGHTS

35.     Teads hereby reserves its rights to amend or supplement this objection in the future as it deems appropriate based on the foregoing items or otherwise, and nothing contained herein should be construed as a waiver of any right to object to the Debtors' treatment of or performance under any agreements between the Debtors and Teads.

## CONCLUSION

WHEREFORE, Teads respectfully requests that the Court enter an order (i) denying the Sale Motion to the extent that it permits that sale of assets of Non-Debtor Subsidiaries without providing appropriate consideration and precludes the Non-Debtor Subsidiaries or their creditors from seeking remedies against the assets sold or against the Purchaser; (ii) establishing that the cure amount owed to Teads pursuant to section 365(b)(1)(A) of the Bankruptcy Code is the full Amount Due of $1,113,485.93, and (iii) granting any other relief as the Court deems appropriate under the circumstances.

Dated:  July 2, 2018                                         **MORRIS JAMES LLP**

/s/ Eric J. Monzo
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:  emonzo@morrisjames.com

-and-

William M. Hawkins, Esq.
Bethany D. Simmons, Esq.
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Telephone:  (212) 407-4000
Facsimile:  (212) 407-4990
E-mail:  whawkins@loeb.com
E-mail: bsimmons@loeb.com

*Counsel for Teads France SAS*