**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>VIDEOLOGY, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11120 (BLS)<br><br>Jointly Administered<br>**Related to Docket Nos. 39, 183, 265 & 282** |

**DEBTORS' REPLY MEMORANDUM IN SUPPORT OF APPROVAL
OF MOTION FOR SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
<u>AND RELATED RELIEF</u>**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file this Memorandum in further support of the *Debtors' Motion for Orders (I) (A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Agreement and Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief; and (II)(A) Approving Sale of Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts, and (C) Granting Related Relief* [Docket No. 39] (the "<u>Sale Motion</u>").[2] The Court has scheduled a hearing on the approval of the Sale Motion for July 17, 2018 at 11:00 a.m.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Videology, Inc. (2191), Collider Media, Inc. (8602), Videology Media Technologies, LLC (6243), LucidMedia Networks, Inc. (8566), and Videology, Ltd., a company organized under the laws of England and Wales. The address of the Debtors' corporate headquarters is 1500 Whetstone Way, Suite 500, Baltimore, MD 21230.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion.

I.  **INTRODUCTION**

1. During the weeks prior to the Debtors' filing of their Chapter 11 petitions, the Debtors were in constant jeopardy of being forced to terminate operations due to actions of their pre-bankruptcy secured lenders. Fortunately, notwithstanding their dire circumstances, the Debtors were able to negotiate and to execute an Asset Purchase Agreement (the "Stalking Horse Agreement") with Amobee, Inc. (the "Stalking Horse Bidder"), providing for the sale of substantially all of the Debtors' assets as a going concern, subject to higher and better bids. On May 14, 2018, the Debtors filed the Sale Motion to begin the well-established process of conducting a sale of their assets under Section 363(f) of the Bankruptcy Code.

2. By an Order entered on June 5, 2018 [Docket No. 164], the Court approved the Stalking Horse Agreement and the bid protections required by the Stalking Horse Bidder, as well as the bid and sale procedures governing the completion of the sale process. As part of the Court approved sale process, the Debtors issued and served notices of proposed cure amounts for contracts that could be deemed executory. In response, a number of objections were filed by non-debtor parties to executory contracts based on disputes over cure amounts or alleged consent requirements ("Cure Objections"). Only one such party, Teads France SAS ("Teads"), also filed an objection to the proposed sale of the Debtors' Purchased Assets [Docket No. 282] (the "Teads Objection"). As discussed below, that lone objection is based on a false premise that has no merit and should be overruled.

3. The Debtors are pleased to report that, in addition to the Stalking Horse Bidder, they received a Qualified Bid from another party, and that they are preparing for an auction to be held on July 13, 2018, where the Debtors are hopeful that the bidding process will generate a favorable outcome for the benefit of creditors and the Debtors' estates. At the hearing to

approve the Sale Motion, the Debtors will seek the Court's approval of the Successful Bid as well as the Back-Up Bid, so that the parties may promptly proceed to Closing.

4. There is no need to resolve any of the Cure Objections at the hearing on approval of the sale.  Only a limited number involve executory contracts for which one of the bidders has requested the Debtors to assume and assign the contracts.  The Debtors will continue to work to resolve the limited number of Cure Objections relating to such contracts, and any not resolved by agreement may be addressed at a future hearing.

**II.     ARGUMENT**

**A. The only objection to approval of the Sale Motion, filed by Teads France SAS, is based on the false premise that the Sale Motion seeks approval of the sale of assets not owned by the Debtors, when in fact the Sale Motion requests approval of only certain assets owned by the Debtors.**

5. The Teads Objection rests on a false premise.  In its objection, Teads complains that the Debtors are attempting to sell assets owned by certain non-Debtor foreign affiliates as part of the sale of the assets of the Debtors and that the sale of such assets would be free and clear of liens and claims. Although the Debtors have advised Teads that only assets owned by Debtors are included in the Purchased Assets to be sold, and that the Debtors are willing to confirm this in the Order approving the Sale Motion, Teads insists on arguing to the contrary.  The evidence before the Court will confirm that there is no basis for any question as to the Purchased Assets being limited to those owned by the Debtors.

**Facts Relevant to the Teads Objection**

6. On May 10, 2018, the Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

7. Certain subsidiaries of the Debtors (the "Non-Debtor Subsidiaries") did not file for relief under the Bankruptcy Code.  The Non-Debtor Subsidiaries include (i) Videology Media

3

57731/0003-16069313v4

Technologies B.V., a Dutch private limited liability company ("VMT BV") which is a subsidiary of VDGY Holding, B.V., another non-Debtor Dutch company which is a subsidiary of Videology, Inc.; and (ii) Videology Media Technologies PTE LTD, a private company organized under the laws of Singapore ("VMT PTE"), which is a subsidiary of non-Debtor Videology Asia PTE LTD, a Singapore company which is a subsidiary of Videology Limited.

8. Prior to bankruptcy, Debtor Videology Media Technologies, LLC ("VMT"), along with Non-Debtor Subsidiaries VMT BV, and VMT PTE entered into a *Global Master Services Agreement* with Teads dated November 9, 2014 (the "Teads Agreement"), which set forth the terms and conditions that would govern to the extent that each of the parties chose to do business with the other. While each of VMT, VMT BV, and VMT PTE (the "VMT Entities") are parties to the agreement, each of the different entities acquires inventory on its own account and then resells such digital advertising inventory to the local Videology operating entity in the region served by that operating entity.

9. VMT BV and VMT PTE have no assets other than accounts receivable owed by one or more of the Debtors and Non-Debtor Subsidiaries. The sole source of revenues received by VMT BV and VMT PTE was from payment of invoices issued to one or more of the Debtors or other Non-Debtor Subsidiaries with which they did business, and related licensing fees collected from publishers from which the Non-Debtor Subsidiaries purchased media. When the Debtors filed their Chapter 11 petitions, consistent with applicable bankruptcy law, they suspended all payment to VMT BV and VMT PTE, which resulted in those companies being unable to pay their creditors, including Teads.

10. Given that neither VMT BV nor VMT PTE have any assets other than accounts receivable owed by one or more Debtors and Non-Debtor Subsidiaries, and given that the

4

Debtors are not selling accounts receivable owed by any of the Debtors or Non-Debtor Subsidiaries, the Stalking Horse Agreement does not include any asset owned by VMT BV or VMT PTE within the scope of Purchased Assets being sold by the Debtors. Likewise, the Qualified Bid received prior to the Bid Deadline from another Bidder also excludes from the Purchased Assets the accounts receivable owned by VMT BV and VMT PTE. In addition, neither the Stalking Horse Bidder nor the other Qualified Bidder seeks to obtain an assignment of the Teads Agreement.

### Approval of the Proposed Sale Will Not Result in the Sale of any Assets Owned by any of the Debtors' Nondebtor Subsidiaries.

11.     The Teads Objection is premised on Teads' assertion that the Debtors seek to sell the assets of the Non-Debtor Subsidiaries. Obj. ¶¶1, 9. Teads' references to the Stalking Horse Agreement omit the most relevant part: the clear provision in Section 2.1 of the Stalking Horse Agreement limiting the Purchased Assets to the assets owned by the Debtors. Section 2.1 specifically provides:

> 2.1 **Purchase and Sale of Assets.** On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall purchase, acquire and accept from Sellers, and Sellers shall sell, transfer, assign, convey and deliver to Purchaser, *all of each Seller's right, title and interest in and to substantially all of the assets of such Seller to the extent related to the Business*, including (but, for the avoidance of doubt, excluding the Excluded Assets) (collectively, the "Purchased Assets")…

Stalking Horse Agreement § 2.1 (emphasis added). Thus, the "Purchased Assets" are limited to assets that the Seller has a "right, title and interest in." The Sellers are all Debtors. If no Seller (Debtor) has any right to an asset listed in §§2.1(a)-(m), such asset will not be sold under the Stalking Horse Agreement.

12.     Teads' argument that section 2.6 of the Stalking Horse Agreement permits the Purchaser to designate "any Contract of Sellers or any other Group Company as a Purchased

5

Contract" similarly fails. *See* Obj. ¶10. Under the Stalking Horse Agreement, a "Purchased Contract" is a "Purchased Asset." Stalking Horse Agreement §2.1(e). As explained above, Purchased Assets are limited to assets *of the Sellers*, which are all Debtors. In addition, although one of the Debtors, VMT, is one of the parties to the Teads Agreement, the Teads Agreement is not being assumed or assigned to the Stalking Horse Bidder, or, for that matter, any other bidder.

### The Court may authorize the sale free and clear of Teads' claim against the Debtors pursuant to Section 363(f) of the Bankruptcy Code.

13. Section 363(f) allows the Debtors to sell their property free and clear of any interest in such property of an entity other than the estate if any of five criteria are satisfied:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. 363(f).

14. Though Congress did not define "interests in property," in the Third Circuit, this phrase encompasses not only *in rem* interests in property, but also "other obligations that may flow from ownership of the property." *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003)(quoting 3 COLLIER ON BANKRUPTCY ¶363.06[1]). Obligations "that are connected to, or arise from, the property being sold" are "interests" under section 363(f). *Folger Adam Sec., Inc. v. DeMatteis/MacGregor* JV, 209 F.3d 252, 259 (3d Cir. 2000).

15. Teads' claim against debtor VMT under the Teads Agreement is an interest in debtor VMT's property. Though general, unsecured claims do not generally constitute "interests" within the meaning of § 363(f) of the Bankruptcy Code, a right to payment *does*

6

constitute an interest in the debtor's property where the "assets of the debtor [] [give] rise to the claim[]." *Trans World*, 322 F.3d 283 at 290.

16.     Teads also complains about section 2.5 of the Stalking Horse Agreement, which provides that the "Purchaser shall not, and shall not be deemed to…be liable for any acts or omissions of any Group Company in the conduct of the Business or arising under or related to the Purchased Assets." (*see* Obj. ¶13).  However, section 2.5 only prevents Teads (or any other creditor) from suing *the Purchaser* on account of any Group Company's action or omission relating to the Purchased Assets.  Contrary to Teads' assertion that section 2.5 "preclude[es] any post-sale remedies against the Non-Debtor Subsidiaries," (Obj. ¶14), this provision does ***not*** prevent creditors from suing those non-debtor Group Companies (such as VMT BV and VMT PTE) directly.  It does provide the Stalking Horse Bidder, and any other successful bidder, from Teads' attempt to assert claims against the Purchaser based on the purchase of the Debtors' assets.  This protection of course is essential to any purchaser in a bankruptcy sale, and is the very reason why the Bankruptcy Code provides for such protection under Section 363(f).

17.     It is too well established to permit debate that this Court has the power to shield the Purchaser from the Debtors' liabilities as part of the purchase of assets of the Debtors' estates under Section 363(f) of the Bankruptcy Code, and many courts have articulated compelling policy reasons justifying such protection.  *See, e.g.*, *Douglas v. Stanco*, 363 Fed.Appx. 100, 102-03 (2d Cir. 2010) ("[I]t is evident that the potential chilling effect of allowing a [successor liability] claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors."); *In re Paris Indus. Corp.*, 132 B.R. 504, 507 n.7 (D. Me. 1991) ("Generally, allowing [successor liability] suits when the bankruptcy court's order of sale specifically precluded such a

transfer of liability[] would severely hamper the ability of bankruptcy courts and trustees to dispose of a debtor's assets.  Such suits would inevitably diminish the value to be realized in a sale by the estate, and in some cases, discourage sales altogether."); *Forde v. Kee-Lox Mfg. Co., Inc.*, 437 F. Supp 631, 633-634 (W.D.N.Y. 1997), *aff'd on other grounds*, 584 F.2d 4 (2d Cir. 1978) (setting forth two policies against post-bankruptcy successor liability: (1) a plaintiff asserting a successor liability claim against a purchaser would, effectively, receive a priority over the claims paid in accordance with the Bankruptcy Code, violating the established priorities, and (2) successor liability claims would affect price trustee could obtain for the assets).

18. In sum, there is no factual basis for Teads' legal arguments, and no legal basis for disrupting the sale process which is on the verge of culminating in a successful conclusion for the benefit of all creditors.

### III.     CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in the Sale Motion, and grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: July 12, 2018 | Respectfully submitted, |
| | COLE SCHOTZ P.C. |
| | /s/ Katherine M. Devanney |
| | Patrick J. Reilley (No. 4451) |
| | G. David Dean (No. 6403) |
| | Katherine M. Devanney (No. 6356) |
| | 500 Delaware Avenue, Suite 1410 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 652-3131 |
| | Facsimile:  (302) 652-3117 |
| | preilley@coleschotz.com |
| | ddean@coleschotz.com |
| | kdevanney@colesschotz.com |
| | - and - |
| | Irving E. Walker |
| | 300 E. Lombard Street, Suite 1450 |
| | Baltimore, MD  21202 |
| | Telephone: (410) 230-0660 |
| | Facsimile:  (410)528-9400 |
| | iwalker@coleschotz.com |
| | *Counsel for Debtors and Debtors in Possession* |

9